**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| SCOTT C. SAVETT, SHERYL BARNES, and SAMUEL HANS, *individually and on behalf of all others similarly situated*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:23-cv-00890-RDA-JFA |
| CAPITAL ONE, N.A. and CAPITAL ONE FINANCIAL CORP., | |
| Defendants. | |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.    Plaintiffs' Claims Against CONA Are Preempted by the National Bank Act. ...... 2

    A.    Plaintiffs' overbroad view of state contract and statutory law would force CONA to pay them more interest. .............................................................. 2

    B.    Plaintiffs' claims are preempted under *Barnett Bank*. ............................... 3

    C.    Plaintiffs distort the *Barnett Bank* standard and rely on inapposite cases. . 4

    D.    CONA's preemption argument is timely and should be decided now........ 8

II.    COFC Is Not Liable for the Alleged Conduct. ...................................................... 9

III.    Plaintiffs Fail to Allege a Breach of the Implied Covenant................................. 10

    A.    The implied covenant does not apply. ..................................................... 12

    B.    Even if the implied covenant were applicable, CONA did not breach it.. 17

IV.    Plaintiffs' Statutory Claims Fail as a Matter of Law. .......................................... 19

    A.    Virginia law applies. ............................................................................... 19

    B.    Plaintiffs' statutory claims are without merit........................................... 20

        1.    The VCPA does not apply, and Plaintiffs do not allege COFC violated it. ..................................................................................... 21

        2.    Plaintiff Savett has not stated a UTPCPL claim. .......................... 22

        3.    Plaintiff Barnes has not stated an MGL 93A claim. ..................... 23

        4.    Plaintiff Hans has not stated an ICFA claim................................. 24

V.    Plaintiffs' Alternative Equitable Claims Should Be Dismissed. .......................... 25

CONCLUSION......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1409 W. Diversey Corp. v. JPMorgan Chase Bank, N.A.*,
    2016 WL 4124293 (N.D. Ill. Aug. 3, 2016) .................................................................4

*Arrowsmith v. Warnick (In re Health Diagnostic Lab., Inc.)*,
    2018 WL 4676339 (Bankr. E.D. Va. Sept. 26, 2018).....................................................15, 18

*Aspinall v. Philip Morris Cos.*,
    813 N.E.2d 476 (Mass. 2004) .................................................................................24

*Ass'n of Banks in Ins., Inc. v. Duryee*,
    270 F.3d 397 (6th Cir. 2001) ..................................................................................5

*Barnett Bank of Marion City, N.A. v. Nelson*,
    517 U.S. 25 (1996).......................................................................................... *passim*

*Bojko v. Pierre Fabre USA, Inc.*,
    2023 WL 4204663 (N.D. Ill. June 27, 2023) .............................................................25

*Burns v. TD Bank, N.A.*,
    2022 WL 17547258 (D.N.J. Dec. 8, 2022) ..................................................................8

*Burrell v. Bayer Corp.*,
    918 F.3d 372 (4th Cir. 2019) ...................................................................................9

*Cantero v. Bank of America, N.A.*,
    49 F.4th 121 (2d Cir. 2022) ..................................................................................5, 8

*In re Cap. One Bank Credit Card Interest Rate Litig.*,
    51 F. Supp. 3d 1316 (N.D. Ga. 2014) .....................................................................13, 16

*In re Cap. One Consumer Data Sec. Breach Litig.*,
    488 F. Supp. 3d 374 (E.D. Va. 2020) .....................................................................20, 25

*Carr v. Sheehy Ashland, Inc.*,
    65 Va. Cir. 4, 2004 WL 3133197 (2004) ..................................................................22

*Chance v. Wells Fargo Bank, N.A.*,
    2012 WL 4461495 (E.D. Va. Sept. 25, 2012)............................................................12, 17

*Chandler v. Am. Gen. Fin., Inc.*,
    329 Ill. App. 3d 729 (2002) ..................................................................................21

*Charles E. Brauer Co. v. NationsBank of Va., N.A.*,
   251 Va. 28 (1996) ............................................................................................11, 13

*In re Checking Account Overdraft Litig.*,
   694 F. Supp. 2d 1302 (S.D. Fla. 2010) ................................................................8

*Chill v. Gen. Elec. Co.*,
   101 F.3d 263 (2d Cir. 1996)................................................................................10

*Cormier v. Carrier Corp.*,
   2019 WL 1398903 (C.D. Cal. Mar. 25, 2019).....................................................21

*Costa v. FCA US LLC*,
   2022 WL 18910359 (D. Mass. Sep. 30, 2022) ..............................................23, 24

*Cuomo v. Clearing House Ass'n, LLC*,
   557 U.S. 519 (2009)..............................................................................................6

*De Vera v. Bank of Am., N.A.*,
   2012 WL 2400627 (E.D. Va. June 25, 2012) ................................................12, 17

*Deming v. Merrill Lynch & Co., Inc.*,
   528 F. App'x 775 (9th Cir. 2013) .........................................................................6

*Easton v. Iowa*,
   188 U.S. 220 (1903)..............................................................................................4

*Enomoto v. Space Adventures, Ltd.*,
   624 F. Supp. 2d 443 (E.D. Va. 2009) .............................................................10, 19

*First Nat'l Bank of San Jose v. California*,
   262 U.S. 366 (1923)..............................................................................................4

*Fleury v. Gen. Motors, LLC*,
   2023 WL 3792411 (N.D. Ill. June 2, 2023) ........................................................25

*Franklin Nat'l Bank v. New York*,
   347 U.S. 373 (1954)..........................................................................................5, 8

*In re GM LLC Ignition Switch Litig.*,
   257 F. Supp. 3d 372 (S.D.N.Y. June 30, 2017) ..................................................24

*Goodman v. PraxAir, Inc.*,
   494 F.3d 458 (4th Cir. 2007) ...............................................................................9

*Great Am. Ins. Co. v. GRM Mgmt., LLC*,
   2014 WL 6673902 (E.D. Va. Nov. 24, 2014).....................................................15

*Gregory v. Metro Auto Sales, Inc.*,
    158 F. Supp. 3d 302 (E.D. Pa. 2016) ...................................................................23

*Gutierrez v. Wells Fargo Bank, N.A.*,
    704 F.3d 712 (9th Cir. 2012) ........................................................................7, 8

*Hawthorne v. Umpqua Bank*,
    2013 WL 5781608 (N.D. Cal. Oct. 25, 2013) ..........................................................6

*In re HSBC Bank, USA, N.A.*,
    1 F. Supp. 3d 34 (E.D.N.Y. 2014) ..................................................................8

*Historic Green Springs, Inc. v. Brandy Farm, Ltd.*
    1993 WL 13029827 (Va. Cir. 1993) .................................................................15

*Hunt v. U.S. Tobacco Co.*,
    538 F.3d 217 (3d Cir. 2008) ........................................................................21

*Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*,
    2013 WL 4061259 (E.D. Va. Aug. 9, 2013) ..........................................................4

*King v. Carolina First Bank*,
    26 F. Supp. 3d 510 (D.S.C. 2014) ..................................................................8

*Knight v. Boehringer Ingelheim Pharm., Inc.*,
    984 F.3d 329 (4th Cir. 2021) .....................................................................8, 9

*Kriegel v. Bank of Am., N.A.*,
    2010 WL 3169579 (D. Mass. Aug. 10, 2010) ........................................................8

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales
    Pracs. & Prod. Liab. Litig.*,
    2017 WL 2646286 (E.D. Va. June 20, 2017) .......................................................21

*Lupian v. Joseph Cory Holdings LLC*,
    905 F.3d 127 (3d Cir. 2018) ........................................................................8

*Mahoney v. NationsBank of Va., N.A.*,
    249 Va. 216 (1995) ............................................................................11, 13

*Marcus v. Dennis*,
    2022 WL 1527524 (E.D. Va. May 13, 2022) .........................................................19

*Martinez v. Wells Fargo Home Mortg., Inc.*,
    598 F.3d 549 (9th Cir. 2010) .....................................................................6, 8

*Masche v. Nichols*,
    188 Va. 857 (1949) ................................................................................21

v

*McKay v. Sazerac Co., Inc.*,
  2023 WL 3549515 (N.D. Cal. May 17, 2023) ........................................................................18

*McLean v. BB&T Bank Corp.*,
  2020 WL 2744107 (E.D. Va. Jan. 13, 2020) ..........................................................................21

*Monroe Retail, Inc. v. RBS Citizens, N.A.*,
  589 F.3d 274 (6th Cir. 2009) ...........................................................................................3, 6, 8

*Montgomery v. Bank of Am. Corp.*,
  515 F. Supp. 2d 1106 (C.D. Cal. 2007) ....................................................................................6

*Moss v. Manufacturers & Traders Tr. Co.*,
  2018 WL 1287415 (E.D. Va. Mar. 13, 2018) .....................................................................18, 19

*Nat'l City Bank of Ind. v. Turnbaugh*,
  463 F.3d 325 (4th Cir. 2006) ....................................................................................................8

*Norman v. Wells Fargo Bank, N.A.*,
  2018 WL 1037048 (E.D. Va. Feb. 23, 2018)...........................................................................21

*Offley v. Fashion Nova, LLC*,
  2023 WL 6201558 (D. Mass. Sept. 22, 2023) .........................................................................24

*Parks v. MBNA Am. Bank, N.A.*,
  278 P.3d 1193 (Cal. 2012) .........................................................................................................9

*Philips v. Pitt Cnty. Mem'l Hosp.*,
  572 F.3d 176 (4th Cir. 2009) ..................................................................................................22

*Riggs Nat'l Bank of Wash., D.C. v. Linch*,
  36 F.3d 370 (4th Cir. 1994) ...............................................................................10, 11, 12, 16

*Rivera v. Navient Sols., LLC*,
  2020 WL 4895698 (S.D.N.Y. Aug. 19, 2020) .........................................................................18

*Rose v. Chase Bank USA, N.A.*,
  513 F.3d 1032 (9th Cir. 2008) ..............................................................................................3, 8

*Run Them Sweet, LLC v. CPA Glob. Ltd.*,
  224 F. Supp. 3d 462 (E.D. Va. 2016) ......................................................................................20

*Salois v. Dime Sav. Bank of New York, FSB*,
  1996 WL 33370626 (D. Mass. Nov. 13, 1996) .......................................................................24

*Schaer v. Newell Brands Inc.*,
  2023 WL 2033765 (D. Mass. Feb. 16, 2023) ..........................................................................24

*Seale & Assocs., Inc. v. Ingersoll-Rand Co.*,
  2016 WL 4435083 (E.D. Va. Aug. 16, 2016) ........................................................................10

*SPGGC, LLC v. Ayotte*,
  488 F.3d 525 (1st Cir. 2007) ...................................................................................................6

*Stockley v. Nissan of N. Am., Inc.*,
  2023 WL 7308071 (M.D. Tenn. Nov. 6, 2023) ......................................................................25

*Stoney Glen, LLC v. S. Bank & Tr. Co.*,
  944 F. Supp. 2d 460 (E.D. Va. 2013) ...............................................................................13, 14

*Stoney Glen, LLC v. S. Bank & Tr. Co.*,
  2013 WL 4539736 (E.D. Va. Aug. 27, 2013).........................................................................14

*SunTrust Mortg., Inc. v. Mortgages Unlimited, Inc.*,
  2012 WL 1942056 (E.D. Va. May 29, 2012) .........................................................................18

*Suttle v. Calk*,
  2022 WL 672759 (N.D. Ill. Mar. 7, 2022)..............................................................................25

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
  150 F. Supp. 3d 593 (D.S.C. 2015)...............................................................................5, 7, 8

*Teitz v. Va. Elec. Power Co. (In re Buffalo Coal Co.)*,
  2010 WL 724702 (Bankr. N.D. W. Va. Feb. 26, 2010).........................................................13

*Townsley v. Atl. Union Bank*,
  2020 WL 4890058 (E.D. Va. Aug. 20, 2020)...................................................................14, 18

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith*,
  2021 WL 240737 (S.D.N.Y. Jan. 25, 2021) ..........................................................................24

*Virginia Vermiculite, Ltd. v. W.R. Grace & Co.- Conn.*,
  156 F.3d 535 (4th Cir. 1998) ...........................................................................................14, 15

*Virginia Vermiculite, Ltd. v. W.R. Grace & Co.- Conn.*,
  965 F. Supp. 802 (W.D. Va. 1997) ..................................................................................14, 15

*W. Cap. Partners, LLC v. Allegiance Title & Escrow, Inc.*,
  520 F. Supp. 2d 777 (E.D. Va. 2007) .....................................................................................22

*Walker v. People's United Bank*,
  305 F. Supp. 3d 365 (D. Conn. 2018).................................................................................5, 8

*Ward's Equip., Inc. v. New Holland N. Am., Inc.*,
  254 Va. 379 (1997) ......................................................................................................10, 11, 12

*Watters v. Wachovia Bank, N.A.,*
    550 U.S. 1 (2007) ........................................................................................................4, 6, 8, 9

**Statutes & Regulations**

12 C.F.R. § 7.4007 ...........................................................................................................4, 6

73 Pa. Stat. Ann. § 201-9.2(a) .....................................................................................10, 23

12 U.S.C. § 24 .........................................................................................................................2

12 U.S.C. § 25b(b)(1) .............................................................................................................6

**Other**

69 Fed. Reg. 1916 (Jan. 13, 2004) ........................................................................................6

80 Fed. Reg. 28472 (May 18, 2015) ......................................................................................6

Merriam-Webster's Dictionary ............................................................................................23

## INTRODUCTION

Plaintiffs ask this Court to impose on Capital One an unprecedented duty to ensure its existing accountholders were informed about the details of a new product (the Performance Savings account) via individualized disclosure, or else increase the interest rate on Plaintiffs' existing products (the 360 Savings account) to match the rate on the new product. Plaintiffs do not and cannot cite any authority imposing such duty.

Plaintiffs fault Capital One for not taking the affirmative step of "inform[ing] its existing 360 Savings accountholders" about the creation of the Performance Savings account or its interest rate. Dkt. 39 ("Opp.") at 6. But Plaintiffs acknowledge that Capital One publicly advertised the Performance Savings account and its interest rate beginning in 2019. Dkt. 19 ("Compl.") ¶ 3. And they concede the "fact" that the "360 Savings APY was printed … on Plaintiffs' online account statements." Opp. at 24. These admissions undermine any contention that Plaintiffs were misled, or that Capital One did anything dishonest or unfair, instead demonstrating that Plaintiffs had all the information they needed to make an informed decision about which account to maintain.

Further, unable to deny that Capital One had an express contractual right to set the interest rate on their accounts, Plaintiffs contort the implied covenant of good faith and fair dealing (and the state statutes they cite) in an attempt to convert Capital One's right to change interest rates at its discretion into a lack of discretion to do anything but *raise* those rates. Plaintiffs' theory that state law transforms a bank's bargained-for power to set an interest rate into a term obligating a bank to set a particular rate runs headlong into National Bank Act preemption. It is also at odds with on-point Virginia and Fourth Circuit law holding that a bank has no duty to exercise discretion in favor of its contractual counterparty when it acts according to a contractual right and that the implied covenant cannot impose affirmative obligations not contemplated by terms of the contract. Plaintiffs' statutory, unjust enrichment, and promissory estoppel claims fail for similar, but

independent, reasons. The Complaint should be dismissed.

## ARGUMENT

**I.     Plaintiffs' Claims Against CONA Are Preempted by the National Bank Act.**

**A.     Plaintiffs' overbroad view of state contract and statutory law would force CONA to pay them more interest.**

Plaintiffs do not dispute that *Barnett Bank of Marion City, N.A. v. Nelson*, 517 U.S. 25 (1996), provides the correct standard for NBA preemption. They do not dispute that CONA has the express power under the NBA to receive deposits, and the incidental powers to set rates and pay interest. *See* 12 U.S.C. § 24. And they do not contend that a law setting a minimum interest rate would escape preemption.

Instead, Plaintiffs argue that CONA has misunderstood their claims. Plaintiffs contend that they "have not claimed that CONA must pay any specific interest rate," that their claims "will not restrict CONA's ability to … set interest rates," and that "CONA is free to set whatever interest rate it deems appropriate." Opp. at 11, 14. This rhetoric cannot be squared with their allegations. Plaintiffs seek to force CONA, through a patchwork of state laws, to pay a higher interest rate on their deposit accounts. First, they allege that a term giving CONA the right, in its sole discretion, to change the interest rate for the 360 Savings product instead *required* CONA to "raise interest rates" or else violate contract and statutory consumer protection law. Compl. ¶ 6. They next contend they are owed the higher amount of interest they would have received from Performance Savings accounts. *Id*. ¶¶ 7–9, 42, 49–51.[1] And they seek an injunction requiring CONA to convert

---

[1] According to Plaintiffs' theory, CONA could also be required to pay a *lower* rate on the Performance Savings account to make the two accounts equal. Understandably, however, Plaintiffs—some of whom now hold Performance Savings accounts—make no such argument. In any event, that formulation of Plaintiffs' theory would still be preempted because it would impermissibly seek to control the interest rate CONA pays.

their accounts into Performance Savings accounts, with a *higher* rate, "and/or … provide variable, high-yield interest rates to legacy 360 Savings accountholders commensurate with the rates offered on the 360 Performance Savings account." *Id*. ¶ 124.

Plaintiffs' Opposition contorts their Complaint in an effort to avoid preemption. But Plaintiffs' proffered interpretation of state law, if accepted, would require CONA to pay Plaintiffs at least as much interest as it pays to Performance Savings accountholders. Preemption turns on "whether the 'legal duty that is the predicate of' Plaintiffs' state law claim falls within the preemptive power of the NBA." *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 (9th Cir. 2008). Here, the "legal duty" Plaintiffs seek to impose on CONA is a duty to raise the interest rate on their accounts. Because CONA would be liable under Plaintiffs' theory if it paid anything less than what they seek, they seek a "minimum" interest rate imposed by state law, regardless of what Plaintiffs would rather call it. Ultimately, Plaintiffs cannot have it both ways, asking to be paid more interest while also arguing that their claims are not preempted because they are *not* asking for more interest.

**B.    Plaintiffs' claims are preempted under *Barnett Bank*.**

The "level of interference that gives rise to preemption" under *Barnett Bank* "is not very high." *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 283 (6th Cir. 2009). As explained in Capital One's Motion to Dismiss, Dkt. 33 ("Mot.") at 10–12, Plaintiffs' claims easily clear that low bar.[2] It is hard to imagine a more intrusive state regulation than the one envisioned by Plaintiffs, which would transform CONA's contractual *right* to adjust interest (or not) into an implied *obligation* requiring CONA to either pay Plaintiffs a certain interest rate or provide

---

[2] Because Plaintiffs contend that "[i]t is not necessary to bifurcate the analysis between common law claims and statutory claims," Opp. at 12 n.6, this Reply discusses these claims together.

bespoke notifications about a new product to existing accountholders. [3] The NBA does not allow states to regulate the terms under which CONA offers deposit accounts and pays interest to accountholders.

Plaintiffs label as a "red herring" the possibility that different states might reach different conclusions about what constitutes a fair rate of interest. Opp. at 14. That label is mistaken. The NBA *requires* that very analysis. "Diverse and duplicative superintendence of national banks' engagement in the business of banking … is precisely what the NBA was designed to prevent." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 13–14 (2007). So, the question is whether state regulation in "all States in which the banks operate" would significantly burden the exercise of its national bank powers, *id*. at 13; *see also Easton v. Iowa*, 188 U.S. 220, 229 (1903); *First Nat'l Bank of San Jose v. California*, 262 U.S. 366, 370 (1923), and not whether or how a single law in a single state will burden a single bank. It is inconceivable that Congress intended for courts across the country to decide whether a national bank's savings accounts pay interest at a rate deemed "unfair" under state laws. "[A]llowing a state common law to micro-manage the deposit procedures of banks would intrude far into the realm reserved for federal law when regulating national banking institutions. Absent a preemption of such common law claims, banks could also face a myriad of conflicting laws across this country relating to deposit procedures." *1409 W. Diversey Corp. v. JPMorgan Chase Bank, N.A.*, 2016 WL 4124293, at *2 (N.D. Ill. Aug. 3, 2016).

**C.    Plaintiffs distort the *Barnett Bank* standard and rely on inapposite cases.**

In an effort to avoid preemption, Plaintiffs unavailingly try to dilute the *Barnett Bank*

---

[3] Plaintiffs do not address CONA's argument that their claims are preempted insofar as they would impose impermissible disclosure requirements, *see* Mot. at 15; 12 C.F.R. § 7.4007(b)(3), and thus have waived any opposition to it. *See Intercarrier Commc'ns, LLC v. Kik Interactive, Inc*., 2013 WL 4061259, at *3 (E.D. Va. Aug. 9, 2013).

standard and recast their claims to fit the mold of otherwise distinguishable cases.

**First**, Plaintiffs contend that their claims are not preempted because there is no "irreconcilable conflict" with federal law. Opp. at 12–13. But *Barnett Bank* has two independent prongs: A state law is preempted if it "prevent[s]" (i.e., renders impossible) "*or* significantly interfere[s] with" (i.e., stands as an obstacle to) "the national bank's exercise of its powers." 571 U.S. at 33 (emphasis added). The Sixth Circuit has correctly rejected as "unpersuasive" exactly what Plaintiffs seek to do here—"attempt to redefine 'significantly interfere' as 'effectively thwart'"—so as to avoid "interpret[ing] 'significantly interfere' in a way that would render the two prongs of the *Barnett Bank* standard redundant." *Ass'n of Banks in Ins., Inc. v. Duryee*, 270 F.3d 397, 409 (6th Cir. 2001). And *In re TD Bank, N.A. Debit Card Overdraft Fee Litigation*, cited by Plaintiffs, is in accord. 150 F. Supp. 3d 593, 610 n.5 (D.S.C. 2015) ("The Court is not persuaded that 'significant interference' is synonymous with complete prohibition.").[4]

Even if Plaintiffs' claims would not outright *prevent* CONA from offering savings accounts, they still are preempted under *Barnett Bank* because they would impose obligations that *significantly interfere* with CONA's federally granted power.

**Second,** Plaintiffs brush aside the Second Circuit's squarely on-point decision in *Cantero v. Bank of America, N.A.*, 49 F.4th 121 (2d Cir. 2022), and the Supreme Court's decision in *Franklin National Bank v. New York*, 347 U.S. 373 (1954). They argue that unlike in those cases, their claims seek "to apply laws of general applicability," and "not laws restricting banking activities specifically." Opp. at 12. That does not matter. "Federally chartered banks are subject to

---

[4] Another of Plaintiffs' cited cases, *Walker v. People's United Bank*, 305 F. Supp. 3d 365, 376–78 (D. Conn. 2018), misapplied *Barnett Bank* twice over. The court effectively cabined its perfunctory analysis to impossibility preemption and improperly considered the general applicability of the challenged law as dispositive of preemption.

state laws of general application in their daily business," *Watters*, 550 U.S. at 11, but only "to the extent consistent with [*Barnett Bank*]," 12 C.F.R. § 7.4007(c). In other words, "[t]he focus is not on whether a particular state law is 'directed at' banks, but rather whether, when applied, the law runs afoul of federal law." *Hawthorne v. Umpqua Bank*, 2013 WL 5781608, at *12 (N.D. Cal. Oct. 25, 2013) (implied covenant claim preempted because it would "impose liability on Umpqua Bank for exercising its discretion to re-order transactions granted by its account agreements"). Courts routinely find generally applicable state laws preempted as applied in specific cases.[5]

Nor does *Cuomo v. Clearing House Association, LLC*, 557 U.S. 519 (2009), help Plaintiffs. There, the Court held only that a state could "*enforce* its valid, non-pre-empted laws against national banks" by judicial process, notwithstanding the OCC's exclusive visitorial oversight of national banks. *Id*. at 529 (emphasis added). In short, *Cuomo* addressed the enforceability of *non*-preempted laws, and says nothing about whether Plaintiffs' claims here are preempted by the NBA.

**Third**, and relatedly, Plaintiffs erroneously argue that because their claims "sound in contract and in tort, ... the Court's inquiry is limited to whether Plaintiffs' claims, as alleged, more than 'incidentally affect the exercise of national banks' deposit taking powers.'" Opp. at 12. That standard comes from a prior version of 12 C.F.R. § 7.4007. *See* 69 Fed. Reg. 1916 (Jan. 13, 2004). The current version of § 7.4007 sets forth the applicable standard, which is the same one articulated by the Supreme Court in *Barnett Bank* and codified in the Dodd-Frank Act in 2011. 12 U.S.C. § 25b(b)(1); 80 Fed. Reg. 28472 (May 18, 2015). Regardless, Plaintiffs' claims here would do far

---

[5] *See, e.g.*, *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 554–57 (9th Cir. 2010) (UCL); *Monroe Retail*, 589 F.3d at 283–84 (conversion claim under Ohio garnishment statute); *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 531–34 (1st Cir. 2007) (New Hampshire Consumer Protection Act); *Deming v. Merrill Lynch & Co., Inc.*, 528 F. App'x 775, 777 (9th Cir. 2013) (Washington Consumer Protection Act); *Montgomery v. Bank of Am. Corp.*, 515 F. Supp. 2d 1106, 1113–14 (C.D. Cal. 2007) (UCL and California's Consumer Legal Remedies Act).

more than "incidentally affect" CONA's federally granted power—they would directly regulate the terms of its deposit accounts. Mot. at 10–12.

    ***Fourth***, Plaintiffs argue that "courts have repeatedly held that state consumer protection laws do not conflict with the NBA and are not preempted thereby." Opp. at 13. That is too clever by half. State consumer protection statutes are not *always* preempted, but they are preempted "when applied in a manner that prevents or significantly interferes with a national bank's federally authorized power." *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712, 725 (9th Cir. 2012). Laws that "establish[] a legal infrastructure" are not preempted, but laws that "regulate the manner or content of the business of banking authorized for national banks" are. *Id*. at 726–27. And while "prohibiting fraudulent business practices … establishes a legal infrastructure," courts cannot use those statutes to regulate *how* a national bank conducts its business. *Id*. at 725, 727 ("vacat[ing] the permanent injunction [requiring a certain posting method] and the $203 million restitution award" because a "court cannot mandate the order in which Wells Fargo posts its transactions").[6]

    Through their statutory claims, Plaintiffs seek to do far more than prevent CONA from making fraudulent or misleading statements (which they have failed to allege in any event). Although some of Plaintiffs' statutory claims nominally sound in fraud, each of these claims seeks to regulate through state law the "manner" (i.e., how CONA decides what interest rate to pay) and the "content" (i.e., what interest rate is paid) of CONA's business. *Id.* at 724; *see also In re TD Bank*, 150 F. Supp. 3d at 617 (claims challenging the "method by which TD Bank calculates and imposes overdraft fees" preempted). The fraud cases cited by Plaintiffs are therefore inapposite.

---

[6] In *Gutierrez*, the UCL was preempted in part not because of OCC's regulations and guidance on the extent of national banks' powers (Opp. at 15), but because it significantly interfered with those powers. Here, Plaintiffs do not dispute the existence of CONA's power to receive deposits and pay interest.

*Burns v. TD Bank, N.A.*, 2022 WL 17547258, at *13 (D.N.J. Dec. 8, 2022); *In re HSBC Bank, USA, N.A.*, 1 F. Supp. 3d 34, 46 (E.D.N.Y. 2014); *Kriegel v. Bank of Am., N.A.*, 2010 WL 3169579, at *8 (D. Mass. Aug. 10, 2010). Moreover, as in *Gutierrez*, Plaintiffs seek an injunction regulating the terms on which CONA offers deposit accounts. Plaintiffs' claims are therefore preempted.

### D.    CONA's preemption argument is timely and should be decided now.

"Preemption is a question of law." *Knight v. Boehringer Ingelheim Pharm., Inc.*, 984 F.3d 329, 337 (4th Cir. 2021). And, as Plaintiffs concede, Opp. at 16, a motion to dismiss is appropriate where preemption is "apparent on the face of the complaint." *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018). In the context of the NBA, resolving a preemption defense on a motion to dismiss is not "relatively rare," as Plaintiffs contend. Opp. at 16. It happens regularly, including in *Cantero*, and in numerous other cases. *See, e.g.*, *Martinez*, 598 F.3d at 554–57 (finding preemption, on appeal from a motion to dismiss without an evidentiary showing); *Monroe*, 589 F.3d at 283–84 (same, with respect to an Ohio law); *see also, e.g., Rose*, 513 F.3d at 1034 (same, on a motion for judgment on the pleadings). In fact, each of the cases Plaintiffs cite in their preemption argument involved a motion to dismiss.[7] And in *Franklin* and *Watters*, the Supreme Court did not examine record evidence before finding preemption, *see* 347 U.S. 373; 550 U.S. 1, confirming this is a legal, and not a fact-bound, issue.

There are at least two straightforward reasons why. ***First***, unlike in other contexts, there is no presumption against preemption in the context of the NBA. *See Nat'l City Bank of Ind. v. Turnbaugh*, 463 F.3d 325, 330–31 (4th Cir. 2006). ***Second***, preemption under the NBA does not

---

[7] *See Walker*, 305 F. Supp. 3d at 370; *King v. Carolina First Bank*, 26 F. Supp. 3d 510, 512 (D.S.C. 2014); *In re HSBC Bank*, 1 F. Supp. 3d at 39; *In re TD Bank, N.A.*, 150 F. Supp. 3d at 598; *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1302 (S.D. Fla. 2010); *Burns*, 2022 WL 17547258, at *1; *Kriegel*, 2010 WL 3169579, at *1.

depend on a factual showing made by one defendant.[8] Rather, the pertinent question is legal: whether potential regulation "by all States," *Watters*, 550 U.S. at 13, would significantly burden the exercise of national banks' powers writ large. Rejecting an argument like Plaintiffs', the Supreme Court of California observed there was "no case decided by our court or by the [U.S.] Supreme Court [where] preemption turned on whether a national bank made an adequate factual showing that state law significantly impaired its federally authorized powers." *Parks v. MBNA Am. Bank, N.A.*, 278 P.3d 1193, 1204 (Cal. 2012). Notably, Plaintiffs do not cite a *single* case considering NBA preemption to support their argument that CONA's preemption defense is unripe.[9] The Court can and should take up the issue of preemption now.

## II.     COFC Is Not Liable for the Alleged Conduct.

Each of Plaintiffs' claims arises out of their savings accounts, and contractual relationship, with CONA. Plaintiffs do not argue, nor could they, that COFC is liable for any acts of CONA under a veil-piercing theory. Rather, Plaintiffs contend that "COFC admits responsibility for Capital One's website operations," and thus "seek to hold COFC directly liable for conduct and omissions on the Capital One online banking website." Opp. at 28.[10] The mere operation of a

---

[8] By contrast, preemption in other contexts can depend on the factual record and often cannot be determined on a motion to dismiss. *E.g.*, *Knight*, 984 F.3d at 338 (preemption for prescription pharmaceuticals turns on existence of newly acquired information regarding risks).

[9] *Burrell v. Bayer Corp.*, 918 F.3d 372, 376 (4th Cir. 2019) (pharmaceutical case considering whether a preemption defense presented a federal question for removal jurisdiction); *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (rejecting statute-of-limitations defense at pleading stage).

[10] Plaintiffs' Complaint copies and pastes the claims against CONA to allege, for example, that COFC "[u]nfairly and deceptively created a new account." Compl. ¶ 86. Plaintiffs' opposition retreats from this (unsupportable) allegation, arguing that COFC's involvement is limited to the jointly operated website. Opp. at 28. Even if Plaintiffs' conclusory allegation that COFC "created" the Performance Savings account could help them state a VCPA claim against COFC, it would run headlong into the VCPA's bank exclusion, as explained below.

website, however, is not enough to state a plausible claim to relief under Plaintiffs' theories of liability against COFC, each of which is premised on *CONA's* allegedly deceptive and misleading creation of the 360 Performance Savings account, *e.g.*, Compl. ¶¶ 86, 92, 100, 109, 118, and *CONA's* alleged failure to "pay interest that is 'commensurate with the rates offered on the 360 Performance Savings account,' whatever that rate may be," Opp. at 11. Plaintiffs cannot state a claim against COFC by alleging that CONA violated the law. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) ("[W]hether Kidder defrauded plaintiffs and whether its parent, GE, defrauded plaintiffs are different questions.").

Finally, Plaintiffs' waiver of any alter-ego or veil-piercing theory is especially damaging to their VCPA, UTPCPL, and unjust enrichment claims. Plaintiffs have not alleged that they engaged "in a consumer transaction" *with COFC*, as required to state a VCPA claim. *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 456 (E.D. Va. 2009). They have not alleged that they "purchase[d] or lease[d] goods or services" *from COFC*, as required to state a UTPCPL claim. 73 Pa. Stat. Ann. § 201-9.2(a). And, apart from conclusory allegations, they have not alleged that they conferred a benefit *on COFC*, let alone that COFC knew of or retained any such benefit, as required to state a claim for unjust enrichment. *See Seale & Assocs., Inc. v. Ingersoll-Rand Co.*, 2016 WL 4435083, at *9 (E.D. Va. Aug. 16, 2016).

## III.    Plaintiffs Fail to Allege a Breach of the Implied Covenant.

Virginia law is clear: The implied covenant of good faith and fair dealing is not a "vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 385 (1997). And "[a]n implied duty of good faith cannot be used to override or modify explicit contractual terms." *Riggs Nat'l Bank of Wash.,*

*D.C. v. Linch*, 36 F.3d 370, 373 (4th Cir. 1994).[11] Capital One has the explicit contractual right to "change" the "variable" rate of interest on Plaintiffs' accounts "at any time." Compl. ¶¶ 6, 79. Plaintiffs thus cannot use the implied covenant to rewrite the Agreement so that Capital One's *right* to change the interest rate is, instead, a *duty* to adjust the interest rate upwards in line with the federal funds rate, in a manner Plaintiffs deem fair.

Plaintiffs do not meaningfully address the Supreme Court of Virginia's binding decision in *Ward's Equipment*. There, the plaintiff sued the defendant for not approving a prospective buyer of the plaintiff's business as an authorized dealer of the defendant's equipment. The contract afforded the defendant discretion to approve such buyers as dealers,[12] but the court held that the implied covenant could not be used to challenge the defendant's decision not to approve the buyer as a dealer, reasoning that the defendant had acted pursuant to its explicit contractual rights. 254 Va. at 384–85. The same is true here: CONA set the interest rates on Plaintiffs' savings accounts pursuant to its explicit contractual right to change (or not change) those rates in its sole discretion.

Nor do Plaintiffs distinguish *Riggs*, where the Fourth Circuit rejected an implied covenant claim against a bank challenging the exercise of its contractual "discretion" to charge a particular interest rate. While it may be true that the lender's discretion was "fettered" in *Riggs*, while CONA's is not, there is nothing to suggest that fact was necessary to the court's decision. Instead, the court merely noted that fact in explaining why the reasoning of a 1984 D.C. Circuit decision did not apply. *See* 36 F.3d at 373 (noting contract in *Riggs* "did not confer an *unfettered* discretion

---

[11] *See also Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 251 Va. 28, 35 (1996) (holding that exercise of explicit contractual right by bank against debtor was not bounded by good faith); *Mahoney v. NationsBank of Va., N.A.*, 249 Va. 216, 219–21 (1995) (similar).

[12] The contract said "[t]he [defendant] *may* refuse to appoint as an authorized dealer any purchaser or prospective purchaser of any of the shares or assets of [plaintiff]." 254 Va. at 384 (emphasis added).

upon one party to determine the extent of the other party's contractual *obligations*." (second emphasis added)). In any event, CONA does not have discretion, fettered or otherwise, to determine Plaintiffs' *obligations* under the Agreement. The Fourth Circuit ultimately held that the "the clear and unambiguous terms of the Note," providing the lender could adjust the rate "in its sole discretion," foreclosed the plaintiffs' implied covenant claim. *Id*. at 372, 374. So too here.

Plaintiffs also contend that CONA "furtively created another online savings account that paid a higher interest rate" without telling accountholders about it. Opp. at 19. Setting aside the fact that CONA did not act "furtively" in any way—Plaintiffs were always told their interest rate, and the applicable rate for the Performance Savings account was always posted online—the theory advanced in their Complaint would impose on CONA an unprecedented fiduciary duty either to prophylactically reach out to 360 Savings depositors and confirm they all understand their ongoing choices to remain in their pre-existing accounts, or else raise their interest rates based on prevailing federal funds rates. Neither of these obligations is found in the Agreement, and the implied covenant "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Ward's Equip.,* 254 Va. at 385.[13]

### A.      The implied covenant does not apply.

To sidestep the clear import of Virginia law, Plaintiffs argue that CONA's explicit contractual authority to adjust interest rates (or not) is not actually a contractual right at all. *See* Opp. at 17–18. They place great importance on the distinction between "discretion" and "rights," but their reliance is misplaced. For one, it is simply not true that contractual rights "must ***accrue***

---

[13] *See also De Vera v. Bank of Am., N.A*., 2012 WL 2400627, at *3 (E.D. Va. June 25, 2012) ("The implied covenant of good faith and fair dealing does not compel a party to take affirmative actions that the party is not obligated to take under the terms of the contract."); *Chance v. Wells Fargo Bank, N.A.*, 2012 WL 4461495, at *4 (E.D. Va. Sept. 25, 2012) (similar).

based on objective circumstances, such as the conduct or breach of the other party." Opp. at 18. Contract rights exist all the time without a condition precedent having been satisfied—that is why parties use contracts to delineate rights and duties in the first place. For another, of course CONA has discretion about how it exercises some of its rights. *Id*. But that does not somehow transform rights defined in a contract into something else. As one of Plaintiffs' own cited cases recognizes, "a finding that every decision to exercise a contractual right is imbued with an act of discretion that must be exercised in good faith would wholly eviscerate the holdings of cases like *Mahoney* and *Charles E. Brauer Co.* [each cited *supra* at 11 n.11], that a party cannot act in bad faith by acting pursuant to an express contractual right." *Teitz v. Va. Elec. Power Co. (In re Buffalo Coal Co.)*, 2010 WL 724702, at *4 (Bankr. N.D. W. Va. Feb. 26, 2010); *see also In re Cap. One Bank Credit Card Interest Rate Litig.*, 51 F. Supp. 3d 1316, 1342–45 (N.D. Ga. 2014) ("If a party could only exercise an explicit contractual right in good faith, then every contractual right could be read as 'discretionary.'").[14] While the court in *Teitz* noted that some cases recognize a distinction between rights and discretion in circumstances not present there (or here), it held the distinction was irrelevant due to the existence of an "express contractual right," which "cannot be altered by enervating [it] with a duty of good faith." 2010 WL 724702, at *4.

Plaintiffs' cases are distinguishable because they did not involve contractual rights, like CONA's here. For example, in *Stoney Glen, LLC v. Southern Bank & Trust Co.*, the defendant had agreed to accept $3 million in settlement of a $9 million debt. 944 F. Supp. 2d 460, 462 (E.D. Va. 2013). Prior to closing the deal, the defendant terminated the agreement, under the impression that the plaintiff had misrepresented certain holdings in a required financial statement. *Id*. at 463. As the court recognized in ruling on a motion for reconsideration, it was not clear whether the

---

[14] Plaintiffs incorrectly cite *Teitz* as a 2013 case decided by a court in this District.

defendant had a right to terminate the agreement (which depended on the plaintiff's conduct). *Stoney Glen, LLC v. S. Bank & Tr. Co.,* 2013 WL 4539736, at *1 (E.D. Va. Aug. 27, 2013) ("Whether Defendant had such a right to terminate is an issue the Court has not yet decided at this early stage."). The court thus held that the defendant had to use its good faith discretion in determining whether any "right [of termination] ha[d] accrued." 944 F. Supp. 2d at 467. But here, the Agreement gives CONA the express *right* to adjust (or not) Plaintiffs' interest rate, and that right accrued immediately on executing the Agreement.[15]

The Fourth Circuit's decision in *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Connecticut*, 156 F.3d 535 (4th Cir. 1998), is similar. There, Grace acquired land from a family in exchange for a lump sum and royalties on any vermiculite mined from it. In exchange, the family agreed that Grace would retain "sole discretion" over whether to mine the land. It was undisputed that Grace could have "'passively' declined to mine" the land or mined the land with whatever intensity it so desired. 965 F. Supp. 802, 829, 832 (W.D. Va. 1997). But Grace donated the land to a nonprofit whose goal was "eliminating vermiculite mining," for a tax benefit and to prevent a competitor from ever mining the land, ensuring the family would never receive any royalties. 156 F.3d at 539. While the Fourth Circuit recognized that "the duty of good faith does not prevent a party from exercising its explicit contractual *rights*," it held that Grace's "sole discretion" under the contract to decide whether to mine the land did *not* include the discretion to donate it to a nonprofit. *Id*. at 542. That makes sense because, as the district court recognized, "the agreements

---

[15] The only case Plaintiffs cite that even arguably supports their claim is *Townsley v. Atlantic Union Bank*, 2020 WL 4890058, at *4 (E.D. Va. Aug. 20, 2020). Although the court recognized (citing *Ward's Equipment*) that the implied covenant "does not prevent parties from exercising their contract rights," and further found that "the deposit agreement allowed Atlantic Union to credit and debit items pursuant to its standard order of posting," it held that the implied covenant was applicable because Atlantic Union had discretion not to use its standard order of posting. *Id*. at 5. That decision misapplies Virginia law.

between the [family and Grace] never mentioned the possibility of such a donation or the tax deduction that accompanied it." 965 F. Supp. at 830. The Fourth Circuit did not use the implied covenant to nullify an explicit, bargained-for contract right like CONA's right to adjust (or not) interest rates—Grace did not have a contractual *right* to donate the land.

The Fourth Circuit also relied heavily on *Historic Green Springs, Inc. v. Brandy Farm, Ltd.*, a state court case which, construing "a nearly identical contractual provision," 156 F.3d at 542, held that "[t]he implied duty of good faith is particularly important in the context of mining leases, where the landowners must necessarily leave the decision-making processes to the expertise of mining companies," 1993 WL 13029827, at *3 (Va. Cir. 1993). The implied duty applies in that context to prevent the "potential for abuse in such situations," where the mining company has "complete control" over whether to mine and thus "over the level of compensation" received by the owner of the royalty interest. *Id*.

Similar features permeate many of the purported "discretion" cases Plaintiffs cite, which demonstrate why this case does not fit that mold. *See Arrowsmith v. Warnick (In re Health Diagnostic Lab., Inc.)*, 2018 WL 4676339, at *11 (Bankr. E.D. Va. Sept. 26, 2018) (HDL was at the "mercy" of the Golias defendants because they were the shareholders with voting power and they revoked the S election); *see also Great Am. Ins. Co. v. GRM Mgmt., LLC*, 2014 WL 6673902, at *5 (E.D. Va. Nov. 24, 2014) (insurance provider failed to adjust the claim by filing suit before the loss could be measured and refused to pay for damage to property that the insured had already incurred).[16] As in these cases and *Virginia Vermiculite*, where a plaintiff is at the defendant's

---

[16] Moreover, neither of these cases appear to have involved a defendant's exercise of a clear contractual right, as CONA has here. *Arrowsmith*, 2018 WL 4676339, at *11 ("the Shareholders' Agreement provided it was the intent of HDL to 'maintain the S election'"); *Great Am. Ins. Co*, 2014 WL 6673902, at *9 ("the parties dispute whether the insurance contract creates a valid and binding right to a coverage determination within a specified period of time").

"mercy," courts have held that the defendant cannot exercise discretion unfairly.[17] But when (as here) plaintiffs are free to make their own decisions, the same does not hold.

Plaintiffs were free to move to the Performance Savings Account (or another bank) at any time. As a result, they were not at Capital One's mercy like a landowner in a mining lease. And, unlike the *Virginia Vermiculite* defendant (which donated mining rights to a nonprofit whose goal was to eliminate vermiculite mining), Capital One did not undermine the very purpose of Plaintiffs' accounts merely by creating a new product with a higher interest rate that Plaintiffs could have switched to at any point. There is no basis to apply Plaintiffs' purported line of "discretion" cases to curtail CONA's express right clearly defined in the Agreement.

As explained in CONA's Motion, this scenario is precisely like *In re Capital One*, where the court, applying Virginia law, ruled in favor of Capital One on the breach-of-implied-covenant claim. 51 F. Supp. 3d at 1342–45. There, as here, the credit cardholders were not at Capital One's mercy because they were offered the choice of "closing their accounts and paying off their balances at the existing rate." *Id*. at 1345. Plaintiffs do not meaningfully address that decision other than to point out that "Capital One credit cardholders were notified by mail that Capital One planned to raise the APR associated with their cards." Opp. at 25. That fact was not relevant to the court's decision that Capital One had a contractual right to increase rates that was not subject to the implied covenant. *See In re Cap. One*, 51 F. Supp. 3d at 1345. In any event, this point disproves, rather than supports, Plaintiffs' theory. In that case, Capital One notified cardholders about increased rates on their *own* credit cards, not about another credit card supposedly offering a "better" rate. *Id*. at 1346. Here, CONA notified Plaintiffs monthly about the interest rate on their accounts. *See*

---

[17] Notably, even in *Riggs*, where the borrower was stuck in the contractual relationship paying the agreed-to interest rate, the Fourth Circuit still concluded that the implied covenant did not apply to override an express right to adjust the interest rate. *See Riggs*, 36 F.3d at 373.

Compl. ¶ 44, n.23. Yet Plaintiffs contend that CONA should have affirmatively and individually contacted 360 Savings accountholders about a *new* product to confirm their ongoing choice to maintain their *current* accounts. That obligation is not in the Agreement; nor can the implied covenant create that extra-contractual disclosure duty. *See Chance*, 2012 WL 4461495, at *4.

> **B.      Even if the implied covenant were applicable, CONA did not breach it.**

As discussed, Plaintiffs' theory that CONA breached the implied covenant by not paying more interest on their 360 Savings account conflicts with CONA's rights under the Agreement. Yet Plaintiffs also say CONA breached the covenant by not communicating to accountholders about the Performance Savings account and its higher rate. *See* Opp. at 16, 19. But imposing such an implied duty of affirmative and individualized disclosure would be unprecedented, and Plaintiffs cite no cases that have imposed a contractual duty to engage in such a communication. In any event, that argument is divorced from Plaintiffs' claim, the Agreement, and the law.

Plaintiffs claim that CONA violated the implied covenant by purportedly "reneg[ing] on its promises to accountholders that they were in CONA's high-interest savings account." Opp. at 22. Those "promises" are not part of the Agreement, which gives CONA the right to "change" the interest rate "at any time." *See* Compl. ¶¶ 6, 79. Thus, even if CONA were required to exercise its contractual *obligations* in good faith, the Agreement does not require CONA to change the interest rate, much less to disclose the existence of a new product to existing account holders. CONA could not have breached any implied covenant stemming from promises that do not exist. *See, e.g., Chance*, 2012 WL 4461495, at *4 ("Under Virginia law, the implied covenant of good faith and fair dealing does not create affirmative obligations."); *De Vera*, 2012 WL 2400627, at *4 (same).

Plaintiffs also continue to argue that CONA's conduct is "dishonest" because it "assured [accountholders] that they would be paid…a 'high interest' rate" and that because the 360 Savings account had a lower rate than the Performance Savings account, that was not true. Opp. at 20. But

Plaintiffs again confuse the issues. Not only does the Agreement contain no promise that Plaintiffs' accounts would have a "high" interest rate, but also the fact that the Performance Savings account paid a higher interest rate than Plaintiffs' account does not mean the latter was no longer "high interest," or that it somehow was "rendered valueless." Opp. at 20. Instead, Plaintiffs essentially allege that they were unhappy with the rates on their account. But those rates were disclosed monthly in Plaintiffs' account statements, as they acknowledge. *See id.* at 24. CONA did not and could not have "hid[den]" any information in the hopes that Plaintiffs "would not notice they were being paid a low rate of interest." *Id.* at 20. Nor should the allegation that Hans "monitored his interest rate by looking at the rates available on Capital One's website" instead of his account statements be held against CONA. *Id.* at 24.[18] Plaintiffs cite no case holding there is anything arbitrary, dishonest, or unfair about CONA's alleged failure to deliver this information through Plaintiffs' preferred medium (i.e., the internet versus their account statements).

Plaintiffs' cases are also unhelpful to them. As explained, *Arrowsmith* and *Townsley* are not instructive about the "[t]he application of the covenant" in the first place, *id.* at 21–22, and they provide no support for Plaintiffs' argument that CONA *breached* the covenant even if it were to apply, as neither involved a situation remotely similar to here, where CONA relied in good faith on its explicit contractual right to adjust interest rates. *SunTrust Mortgage, Inc. v. Mortgages Unlimited, Inc.*, 2012 WL 1942056, at *4 (E.D. Va. May 29, 2012), and *Moss v. Manufacturers &*

---

[18] *Rivera v. Navient Sols., LLC*, 2020 WL 4895698, at *9 (S.D.N.Y. Aug. 19, 2020), *and McKay v. Sazerac Co., Inc.*, 2023 WL 3549515, at *7 (N.D. Cal. May 17, 2023), are easily distinguishable. Neither is an implied covenant (or even a breach of contract) case, and both cases simply acknowledge that the law does not require a reasonable consumer to wade through fine print that may contradict a clear, affirmative misrepresentation. Plaintiffs do not allege that CONA affirmatively misrepresented anything in Plaintiffs' monthly statements or that the interest rate in their monthly statements was in "fine print"; nor have they explained how any of this is relevant to Capital One's obligations under the plain terms of the Agreement.

*Traders Trust Co.*, 2018 WL 1287415, at *4 (E.D. Va. Mar. 13, 2018), also did not involve a defendant purporting to exercise explicit contractual rights. And *Marcus v. Dennis* involved repeated misrepresentations that stated a breach-of-express-contract claim; the implied covenant was merely "another basis to anchor [the plaintiff's] breach of contract." 2022 WL 1527524, at *5 (E.D. Va. May 13, 2022). That case is irrelevant here, where CONA did not breach the Agreement and told Plaintiffs in their monthly account statements how much interest they were earning.

*Enomoto* is also readily distinguishable. There, the plaintiff agreed to pay $20 million for the defendant to facilitate a space flight with the Russian government. 624 F. Supp. 2d at 446. The plaintiff alleged the defendant lied repeatedly and induced him to pay millions of dollars in non-refundable payments on false pretenses before the plaintiff was ultimately medically disqualified for the space flight, while the defendant retained all the money paid. *Id*. at 447. After holding the plaintiff stated a claim for breach of the express contract, the court held he also stated an implied covenant claim because he alleged the defendant "purposefully failed to provide him with a space flight and purposefully failed to inform him of the high likelihood of medical disqualification until after he had paid three or four payments that Defendant submits are non-refundable." *Id*. at 451. The facts of that case could not be further from this one: Plaintiffs do not allege CONA breached the terms of the Agreement at all (let alone purposefully), CONA disclosed Plaintiffs' interest rate every month, and they could have switched to the Performance Savings account at any time.

## IV.   Plaintiffs' Statutory Claims Fail as a Matter of Law.

### A.   Virginia law applies.

Plaintiffs argue that "consumer rights cannot be waived by a choice of law provision" and then cite First Circuit, Illinois, and Pennsylvania case law. Opp. at 29–30. Those cases do not apply *Virginia law*, despite Plaintiffs' acknowledgement that Virginia law governs. *Id*. at 29. Plaintiffs' cases suggesting that Capital One is "prohibit[ed] [ ] from using the choice-of-law provision as a

19

waiver" under other states' laws are inapposite.[19] *Id.* at 30; *see also* Mot. at 22.

### B.   Plaintiffs' statutory claims are without merit.

Even if Plaintiffs' statutory claims could be pursued, Plaintiffs fail to explain why statements in advertisements describing their accounts as "high interest" were not mere "puffery." They argue that because "Capital One itself defines the term 'high interest' on its own website," it cannot be puffery. Opp. at 32. Not so. Plaintiffs allege Capital One's website defined high interest when describing an account that "often has a higher interest rate or annual percentage yield (APY) than a traditional savings account." Compl. ¶ 22. That circular statement, however, does not make the term "high interest" any less vague or subjective. Moreover, Plaintiffs do not contend that the rate on their 360 Savings Accounts was *lower* than a "traditional savings account"; nor does the statement suggest that "high interest" must meet some threshold percentage to qualify. Notably, Plaintiffs also do not even try to distinguish the cases cited by Capital One showing those statements are puffery under any state's law. *See* Mot. at 24–26.

Moreover, Plaintiffs' only allegations related to reliance merely "presume" it. Plaintiffs say that because "Defendants failed to inform depositors that 360 Savings and 360 Performance Savings are identical except for the interest rate," "no rational person would maintain an identical account that paid materially lower interest." Opp. at 33. Setting aside that Capital One always

---

[19] Plaintiffs rely on *In re Capital One Consumer Data Security Breach Litigation*, 488 F. Supp. 3d 374 (E.D. Va. 2020), which held that Virginia's choice-of-law rules applied. That does not appear to be in dispute here. Rather, the real issue is one Plaintiffs do not address: Whether another state's statutes apply under Virginia's choice-of-law rules where, as here, there is a valid choice-of-law clause specifying Virginia law. *Run Them Sweet, LLC v. CPA Glob. Ltd.*, 224 F. Supp. 3d 462, 468 (E.D. Va. 2016), answers that question in the negative, and *In re Capital One* did not reach it, holding the issue was fact-bound and noting the "tension" with *Run Them Sweet*. 488 F. Supp. 3d at 393 n.8. Capital One maintains that *Run Them Sweet* was correctly decided and should be followed. And while Plaintiffs argue *Run Them Sweet* applies only to cases involving two businesses, that limitation is found nowhere in the court's opinion.

disclosed the Performance Savings account on its website and made available all pertinent information regarding Plaintiffs' current accounts, this "presumed reliance" theory has been rejected under Pennsylvania and Virginia law, and Plaintiffs have not distinguished or even addressed the cases Capital One cited. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008); *see also Masche v. Nichols*, 188 Va. 857, 864 (1949). Plaintiffs also have not explained, and have cited no case suggesting, how it is *reasonable* to rely on any purported omission by Capital One when they were told their interest rate every month.

Plaintiffs assert that "[r]eliance is not required under MGL 93A or ICFA." Opp. at 33. But both cases they cite make clear that though a plaintiff "need not necessarily prove actual reliance," they must prove "a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception." *Cormier v. Carrier Corp.*, 2019 WL 1398903, *4 (C.D. Cal. Mar. 25, 2019) (MGL 93A); *see also Chandler v. Am. Gen. Fin., Inc.,* 329 Ill. App. 3d 729, 741 (2002); *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2017 WL 2646286, at *18 (E.D. Va. June 20, 2017) (ICFA). Plaintiffs have failed to explain how Capital One was obligated to disclose more information about the new account than it already did; nor have they explained how any of Capital One's alleged omissions could have *reasonably* deceived Plaintiffs, who were told their interest rate every month.

### 1. The VCPA does not apply, and Plaintiffs do not allege COFC violated it.

Although Plaintiffs argue that COFC is not subject to the VCPA's bank exclusion (Opp. at 35–36), the argument is belied by their own allegations. As in *Norman v. Wells Fargo Bank, N.A.*, 2018 WL 1037048, at *5 (E.D. Va. Feb. 23, 2018), and *McLean v. BB&T Bank Corp.*, 2020 WL 2744107, at *2 (E.D. Va. Jan. 13, 2020),[20] Plaintiffs allege that COFC engages in banking

---

[20] Plaintiffs try to distinguish *McLean*, contending that BB&T Corporation is not a bank holding

activities. *E.g.,* Compl. ¶ 86. Plaintiffs cannot litigate against COFC with the goal of substantiating those allegations, which, if proven, would take COFC outside the ambit of the statute altogether.[21]

Nor are Plaintiffs' allegations supporting the VCPA claim sufficient. Plaintiffs cite no case showing COFC had a duty to "disclose that the 360 Savings account had fundamentally changed," as they contend. Opp. at 34; *see W. Cap. Partners, LLC v. Allegiance Title & Escrow, Inc.*, 520 F. Supp. 2d 777, 782 (E.D. Va. 2007) ("[S]ilence cannot give rise to liability for fraud in the absence of a duty of disclosure."). Plaintiffs were accountholders with CONA, not COFC. *See* Compl. ¶ 79.

Plaintiffs cite *Carr v. Sheehy Ashland, Inc.*, 2004 WL 3133197 (Va. Cir. 2004), in support of their VCPA claim. Opp. at 34. That case is inapposite. The plaintiffs purchased a car from the defendant and, as relevant here, alleged they were told that the defendant did not receive "any of the financing costs." 2004 WL 3133197 at *1. The plaintiffs "later learned … that [the defendant] received a 'yield spread premium' from the financing costs." *Id*. The court thus held that the misrepresentations and concealment regarding the yield spread premium were sufficient to state a claim because they were "statements of fact." *Id*. at *2–3. A separate alleged misrepresentation regarding the "best interest rate available" played no part in that analysis and, contrary to Plaintiffs' parenthetical citation, was not held sufficiently definite to state a claim. *Id*. at *3.

### 2.    *Plaintiff Savett has not stated a UTPCPL claim.*

Plaintiff Savett's claim is precluded, as he does not allege that he leased or purchased

---

company. They are wrong. *See* https://www.ffiec.gov/npw/Institution/TopHoldings (reporting date 9/30/2019, entry 16), last visited Jan. 24, 2024. In fact, it is still a bank holding company to this very day, having changed its name in December of 2019 to Truist Financial Corporation. *See* https://www.ffiec.gov/npw/Institution/Profile/1074156?dt=20191207 (history tab, 12/7/2019 entry), last visited Jan 24, 2024. These public records are judicially noticeable on a motion to dismiss. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[21] If the Court indulges Plaintiffs' retreat from these allegations, the claim should still be dismissed because Plaintiffs have not alleged a "consumer transaction" with COFC (*supra* at 10).

anything. *See* 73 Pa. Stat. Ann. § 201-9.2(a). Plaintiff Savett argues that opening a bank account "is a purchase in the ordinary sense of the word." That is incorrect. A purchase is "something obtained for a price in money or its equivalent." Merriam-Webster's Dictionary, "Purchase." Plaintiff does not allege that he obtained anything for a "price." This deficiency dooms Plaintiff's UTPCPL claim, but the claim would still fail regardless. Plaintiff's argument that Capital One intentionally failed to disclose "that 360 Performance Savings was a new account," Opp. at 37, is belied by his allegation that this information was found online. *See* Compl. ¶ 38. Given that Capital One did not hide anything from Plaintiff, this case is also unlike *Gregory v. Metro Auto Sales, Inc.*, where the court sustained the UTPCPL claim because the defendant there had been "concealing the vehicle's use and accident history." 158 F. Supp. 3d 302, 308 (E.D. Pa. 2016).

### 3. *Plaintiff Barnes has not stated an MGL 93A claim.*

In her opposition, Plaintiff Barnes simply reiterates the standards that courts use when analyzing MGL 93A claims—but she does little to explain how the Complaint's allegations, and Capital One's conduct, fit within the statutory framework. For example, it is irrelevant that "[a]ggravated breach of contract also violates MGL 93A," given that Capital One did not breach its contract at all. Opp. at 38. Rather, it acted in accordance with its contractual authority when deciding whether and when to adjust interest rates on Plaintiff's account. *See* Compl. ¶ 6.

Further, Plaintiff's argument that it was "deceptive to simply remain silent" regarding the "new account" and "the nature of the 360 Savings account" ignores both law and fact. Opp. at 37. To start, Capital One must was not "under a duty to the other to exercise reasonable care to disclose the matter in question." *See* Mot. at 27. The only case Plaintiff offers to challenge that point is *Costa v. FCA US LLC*, 2022 WL 18910359, at *11 (D. Mass. Sep. 30, 2022). There, the court held that there was sufficient evidence that the defendant should have disclosed material information

"significantly involving health and safety," because it "knew of issues" with "defective safety equipment" in its vehicles. *Id*. That case comes nowhere close to the facts here, in which Plaintiff Barnes has identified *no law* imposing a duty.

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith*, 2021 WL 240737 (S.D.N.Y. Jan. 25, 2021), also does not move the needle. There, the court found that the plaintiff's "previously dismissed claim under Section 93A" could survive because the defendant made an affirmative misrepresentation "by indicating that her accounts were linked and failing to specify that her statements had to be 'statement-linked' in order to earn the higher interest rate." *Id*. at *3. But Plaintiffs have not alleged that Capital One made any affirmative misrepresentation—instead, they allege at most that Capital One said, at one point, that their accounts were "high interest." That subjective statement cannot be proven false.[22]

### 4.    *Plaintiff Hans has not stated an ICFA claim.*

For the ICFA claim, Plaintiff Hans also merely reiterates the standard for determining whether an ICFA claim can survive—he does not demonstrate why his claim should survive here. At most, Plaintiff argues, as Plaintiffs do for each statutory claim, that "Capital One's intentional failure to disclose that 360 Performance Savings was a new account and that the nature of the 360 Savings account had fundamentally changed is both unfair and deceptive." Opp. at 39. That is

---

[22] The cases in Plaintiffs' string-cite footnote are so far afield as to warrant only minimal discussion. *See Salois v. Dime Sav. Bank of N.Y., FSB*, 1996 WL 33370626, at *11 (D. Mass. Nov. 13, 1996) (MGL claim predicated on the violation of other Massachusetts statutes regulating mortgage loans)*; In re GM LLC Ignition Switch Litig*., 257 F. Supp. 3d 372, 418 (S.D.N.Y. June 30, 2017) (failure to disclose known automobile defect); *Aspinall v. Philip Morris Cos*., 813 N.E.2d 476, 487–88 (Mass. 2004) (intentional misrepresentations and failure to disclose known risks of cigarette smoking); *Offley v. Fashion Nova, LLC*, 2023 WL 6201558, at *4 (D. Mass. Sept. 22, 2023) (addressing injury element of MGL claim, not at issue here); *Schaer v. Newell Brands Inc*., 2023 WL 2033765, at *2 (D. Mass. Feb. 16, 2023) (MGL claim predicated on violation of the Magnuson-Moss Warranty Act).

wrong. Even if Capital One had "fail[ed] to disclose" anything (it did not), an "incomplete" disclosure is not actionable—an "affirmatively 'false impression'" is required. *See* Mot. at 27 (quoting *Gouwens v. Target Corp.*, 2022 WL 18027524, at *3 (N.D. Ill. Dec. 30, 2022)). Plaintiff Hans does not explain how Capital One created an "affirmatively false impression," when his interest rates and the rates of other accounts were readily available. Plaintiff cites no law requiring any further disclosures in these circumstances. Finally, *Suttle v. Calk*, 2022 WL 672759, at *8 (N.D. Ill. Mar. 7, 2022), which involved the failure to disclose material terms of the plaintiff's loan, is inapposite here, where Plaintiffs allege that Capital One did not disclose the existence of a separate account, the Performance Savings account.[23]

## V.     Plaintiffs' Alternative Equitable Claims Should Be Dismissed.

Alternative pleading does not save Plaintiffs' equitable claims from dismissal. Plaintiffs do not address or distinguish the cases cited by Capital One holding that such claims should be dismissed where, as here, the parties agree there is a valid and enforceable contract.[24]

### CONCLUSION

For these reasons, Capital One's Motion to Dismiss should be granted.

Respectfully submitted, this 25th day of January, 2024.

/s/ David L. Balser

**KING & SPALDING LLP**
David L. Balser (admitted *pro hac vice*)

---

[23] Plaintiffs' throw-away citations to cases about the failure to disclose automobile defects, *Stockley v. Nissan of N. Am., Inc.*, 2023 WL 7308071, at *46–47 (M.D. Tenn. Nov. 6, 2023); *Fleury v. Gen. Motors, LLC*, 2023 WL 3792411, at *15 (N.D. Ill. June 2, 2023), or about the presence of a carcinogen in gasoline, *Bojko v. Pierre Fabre USA, Inc.*, 2023 WL 4204663, at *23–24 (N.D. Ill. June 27, 2023) (*dismissing* ICFA claim), lend no support to their theory.

[24] Although the court allowed an unjust enrichment claim to proceed in *In re Capital One Consumer Data Security Breach Litigation*, that was because it was disputed at the motion-to-dismiss stage whether there was an enforceable contract. 488 F. Supp. 3d at 410. That is not the case here.

John C. Toro (admitted *pro hac vice*)
Robert D. Griest (admitted *pro hac vice*)
Mandi Youngblood (admitted *pro hac vice*)
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309
Tel.: (404) 572-4600
dbalser@kslaw.com
jtoro@kslaw.com
rgriest@kslaw.com
myoungblood@kslaw.com

Jamie Dycus (admitted *pro hac vice*)
1185 Avenue of the Americas
34th Floor
New York, New York
Tel.: (212) 556-2100
jdycus@kslaw.com

I. Cason Hewgley IV (admitted *pro hac vice*)
1100 Louisiana
Suite 4100
Houston, TX 77002
Tel.: (713) 751-3200
chewgley@kslaw.com

/s/ *Bryan A. Fratkin*
Bryan A. Fratkin (VSB No. 38933)
**MCGUIREWOODS LLP**
800 East Canal Street
Richmond, VA 23219
Tel.: (804) 775-1000
Fax: (804) 775-1061
bfratkin@mcguirewoods.com

John S. Moran (VSB No. 84236)
**MCGUIREWOODS LLP**
888 16th Street NW, Suite 500
Washington, DC 20006
Tel.: (202) 828-2817
Fax: (202) 828-3327
jmoran@mcguirewoods.com

*Counsel for Defendants*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 25, 2024, I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

<em><u>/s/ Bryan A. Fratkin</u></em><br>Bryan A. Fratkin