IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| In re:<br><br>CAPITAL ONE 360 SAVINGS ACCOUNT<br>INTEREST RATE LITIGATION | MDL No. 1:24md3111 (DJN)<br><br>This document relates to<br><u>ALL CASES</u> |

### MEMORANDUM ORDER
### (Appointing Special Master)

This matter comes before the Court in reference to the Court's Pretrial Order No. 5 (ECF No. 14), which advised the parties pursuant to Rule 53(b)(1) that the Court was considering the appointment of a special master to oversee and manage discovery in this complex case. Pretrial Order No. 5 directed the parties to file any objections that they might have to both (1) the appointment of a special master for discovery and (2) the appointment of Mr. Craig P. Seebald, a distinguished antitrust lawyer and a partner at the firm of Vinson & Elkins, to fill that role. (*Id.* at 2.) On July 17, 2024, Plaintiffs noted their objections to the Court's proposal.[1] (ECF No. 22 ("Pls.' Objs.").) Although Plaintiffs do not object in principle to the appointment of a special master, they believe that appointment at this stage would be premature. In addition, Plaintiffs do not consent to the appointment of Mr. Seebald due to alleged "potential grounds" for Mr. Seebald's disqualification. For the reasons stated below and during the initial pretrial conference on July 18, 2024, the Court hereby OVERRULES Plaintiffs' Objections and APPOINTS Craig

---

[1] Defendants filed a notice indicating that they do not object to the appointment of Mr. Seebald. (ECF No. 21.)

P. Seebald as Special Master for the purposes of overseeing discovery in this MDL.[2] In addition, the Court describes the Special Master's duties and terms (as required by Rule 53) and DIRECTS the Special Master to "proceed with all reasonable diligence." Fed. R. Civ. P. 53(b)(2).

## I.  PLAINTIFFS' OBJECTIONS

Because Plaintiffs object to the appointment of Mr. Seebald, the Court finds it important to set forth its reasons for selecting him specifically for this important task. Plaintiffs note that the practice of other courts, as reflected in the Manual for Complex Litigation, involves choosing a special master "from a list submitted by the parties." (Pls.' Objs. at 3 (quoting Manual for Complex Litigation (Fourth) § 11.52 (2004)).) However, the experience of the undersigned has been that nomination of a special master without the input of the parties better ensures that the person selected stands free of influence from the parties themselves, and that such a person can be selected among persons whose character and fitness for the position are well known to the Court. Mr. Seebald meets that standard with aplomb. His decades of experience with complex discovery disputes in this District and Division give him, in the opinion of the undersigned, the knowledge necessary to do justice in the spirit of the "Rocket Docket"; and his temperament gives the Court utmost confidence that he will act as a beneficial resource for, and impartial judge of, the parties in this case. In short, the Court holds Mr. Seebald in the highest regard and has full confidence in his ability to fulfill this important assignment. With that introduction

---

[2]  Although the Court appoints Mr. Seebald as a Special Master only for discovery, the Court reserves the right to amend the scope of his appointment to include other pretrial duties, should such amendment serve the adjudication of this case.

2

complete, the Court proceeds to evaluate — and reject — Plaintiffs' various objections to the appointment of a special master in general, and of Mr. Seebald in particular.

### A.     Plaintiffs' General Objections

Plaintiffs state first that "appointment of a special master is premature, as there are currently no ripe discovery disputes." (Pls.' Objs. at 1.) The Court disagrees. The Federal Rules expressly contemplate that Courts will discuss "controlling and scheduling discovery" as well as "referring matters to . . . a master" at a Rule 16 conference like the one that the Court conducted on July 18, 2024. Fed. R. Civ. P. 16(c)(2)(F), (H). The Court believes that a special master appointed to oversee discovery should oversee *all* of discovery, including the negotiation of any discovery protocols, protective orders and so forth. A Rule 26(f) conference constitutes just as much a part of the discovery process as a document request or interrogatory.

In addition, the Court's experience counsels that the early involvement of a special master in complex disputes facilitates the parties in setting out "ground rules" that effectively prevent unnecessary battles at later stages of the case. The Court's practice and experience in this District, including in the Alexandria Division, provides all the information necessary to determine that excessive and rancorous pretrial discovery practice will strain the capacity of the district judges and magistrate judges of this District to "effectively and timely address[]" their disputes and distract the bench of the "Rocket Docket" from the prompt and efficient adjudication of its other cases. Fed. R. Civ. P. 53(a)(1)(C). A master, unlike a magistrate judge, can devote full attention to the procedural and factual complexities of the MDL process. The Court stands convinced that a special master would be more effective than any district or magistrate judge of this District at resolving the issues that will inevitably arise throughout this litigation — issues that the Court expects to be both "tough and hotly disputed." *Fikes*

3

*Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 729 (2d Cir. 2023). As the Second Circuit has acknowledged, "district courts with loaded dockets may rely on special masters to decide thorny things." *Id.* Appointing a special master now would be justified by Rule 53(a)(1)(C), and the Court finds Plaintiffs' general objections unpersuasive.

### B. Plaintiffs' Specific Objections

Plaintiffs next object to the appointment of Mr. Seebald specifically, because they assert "there are 'potential grounds for disqualification' of Mr. Seebald precluding his appointment." (Pls.' Objs. at 2 (quoting Fed. R. Civ. P. 53(a)(2)).) Plaintiffs make two arguments for Mr. Seebald's disqualification: That Mr. Seebald has a financial interest in this case and that his impartiality could reasonably be questioned by a reasonable observer. After considering Plaintiffs' arguments, the Court rejects them both.

Rule 53(a)(2) states that, absent the parties' consent, "[a] master must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455." That recusal statute, in turn, contains two different provisions relevant here. First, it requires disqualification "in any proceeding in which [the master's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Second, it requires disqualification when the special master "knows that he, individually or as a fiduciary, . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." *Id.* at § 455(b)(4). The term "fiduciary" comprises "such relationships as executor, administrator, trustee, and guardian." *Id.* at § 455(d)(3). The term "financial interest" includes "a legal or equitable interest, however small." *Id.* at § 455(d)(4).

The Court begins with Plaintiffs' financial argument. Mr. Seebald's law firm, Vinson & Elkins ("V&E"), represents the company Capital One Securities, Inc. ("Securities"). Mr. Seebald does not represent Securities personally, and the matters in which V&E represents Securities, Inc. "are being handled by attorneys in another office of [V&E]." (ECF No. 14-1 ¶ 4.) Securities is a wholly-owned subsidiary of Capital One Financial Corp. ("Financial"), which is a defendant in this MDL. FINRA, *Capital One Securities, Inc. BrokerCheck Report* 16 (2024), https://files.brokercheck.finra.org/firm/firm_44158.pdf [https://perma.cc/BH5F-C9H4]. Mr. Seebald "will formally wall [him]self off" from any matters involving Securities to prevent him from receiving any information concerning those matters — and so that the attorneys staffed on those matters "receive no information" regarding Mr. Seebald's actions in this litigation. (ECF No. 14-1 ¶ 5.)

Plaintiffs argue that V&E's representation of Securities leaves Mr. Seebald with "any other interest that could be substantially affected by the outcome of [this] proceeding." 28 U.S.C. § 455(b)(4). The breadth of the phrase "any other interest" defies easy or precise definition, but the statutory command can nevertheless be sensibly applied by considering "the remoteness of the interest and its extent or degree." *In re Va. Elec. & Power Co.*, 539 F.2d 357, 368 (4th Cir. 1976).

Mr. Seebald, as a partner at V&E, receives a share of the profit that V&E derives from representing Securities. He does not directly "'own' any legal or equitable interest" in Securities or, for that matter, in Financial. *Id.* at 366. His only financial interest here consists of his share of V&E's equity. If Mr. Seebald owned stock in Securities, that would warrant recusal, as the outcome of this case could affect the performance of Financial's stock, and this could in turn affect the performance of Securities as a company. But Mr. Seebald has no share in Securities,

5

and the profit that he derives from that representation presumably bears no relationship to how Securities performs as a business. Mr. Seebald perhaps shares V&E's interest in keeping Securities as a client, but no evidence exists to believe that this relationship would be affected one way or the other by Mr. Seebald's rulings for or against Financial as a special master in this case. It would be wholly speculative to conclude that such an indirect and inchoate interest warrants disqualification. *See United States v. Stone*, 866 F.3d 219, 229 (4th Cir. 2017) ("As the interest becomes less direct, it will require disqualification only if the litigation substantially affects that interest."). A financial interest in a non-party does not suffice to warrant recusal, and a non-financial interest cannot be credited if it is "so remote as to be for all practical purposes non-existent." *Id.* at 229–30. The Court finds that Mr. Seebald's interest in the outcome of this case constitutes, at best, "a bare expectancy or chance to ultimately benefit" that does not warrant recusal under § 455(b)(4). *Id.* at 230 (quoting *Virginia Electric*, 539 F.2d at 368).

Next, the Court turns to Plaintiffs' asserted appearance of impartiality. Under § 455(a), the Court must determine whether Mr. Seebald's "impartiality might reasonably be questioned." This "objective standard" requires "a nuanced approach." *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998). The Court must assume the perspective of a "reasonable outside observer," that is, "a person outside the judicial system," and keep in mind that a judge "may regard asserted conflicts to be more innocuous than an outsider would." *Id.* The standard also requires considering "all the circumstances." *Sao Paulo State v. Am. Tobacco Co.*, 535 U.S. 229, 232–33 (2002) (per curiam) (emphasis removed).

Plaintiffs "in no way question Mr. Seebald's integrity," but they nevertheless argue that Mr. Seebald's career as a "litigator who represents primarily large companies (and only defendants in class actions) creates an appearance of potential bias." (ECF No. 22 at 2.) This

6

assertion is divorced from the facts. To begin with, Mr. Seebald's firm profile markets him as first and foremost an antitrust lawyer with a core practice of "defending multinational companies in cartel and price-fixing investigations" and a "particular area of focus" in "antitrust enforcement against government contractors." Vinson & Elkins, *Craig P. Seebald*, https://www.velaw.com/people/craig-p-seebald/ [https://perma.cc/YKE7-T796]. Moreover, Mr. Seebald has — and continues to — represent MDL plaintiffs in addition to MDL defendants.[3]

In any event, Plaintiffs' contentions that Mr. Seebald's practice brings his impartiality into doubt lack all merit. Federal courts repeatedly and firmly reject disqualification on allegations of such ideological bias. *See, e.g., Laird v. Tatum*, 409 U.S. 824, 831 (1972) (Rehnquist, J., in chambers) (that a case "involv[es] points of law with respect to which [a judge] had expressed an opinion or formulated policy" does not warrant disqualification). Various cases vindicate that rule. Just as no appearance of partiality can result when a "conservative public interest advocate" practices before a judge with a "liberal political background," *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 84, 92–93 (D.D.C. 2009), and just as a judge who represented "civil rights plaintiffs" creates no appearance of partiality by sitting on a school desegregation case, *Wessmann ex rel. Wessmann v. Bos. Sch. Comm.*, 979 F. Supp. 915, 916–18 (D. Mass. 1997), Mr. Seebald's impartiality cannot reasonably be questioned simply because of his clientele.

---

[3] Mr. Seebald represents a group of plaintiffs in MDL No. 2925, *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, No. 1:20mc8 (D.D.C.). He also represents Wanhua Chemical (America) Co., a defendant in MDL No. 2862, *In re Diisocyanates Antitrust Litig.*, No. 18-1001 (W.D. Pa.), and Windsor Property Management Co., a defendant in MDL No. 3071, *In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, No. 3:23md3071 (M.D. Tenn.).

To summarize Plaintiffs' § 455(a) argument, Plaintiffs insist that Mr. Seebald should be disqualified from a case involving different companies and different areas of law from his usual practice, merely because his clients tend to vaguely resemble the defendants in this case. Plaintiffs have not provided a single case to support that proposition, and the Court can find none. Plaintiffs' argument cannot suffice to disqualify Mr. Seebald here. Thus, none of Plaintiffs' objections have any force, and none of them prevent the Court from appointing Mr. Seebald as a special master. The Court hereby OVERRULES Plaintiffs' objections and proceeds to issue its Order of Appointment.

## II.    ORDER OF APPOINTMENT

For the reasons set forth in Part I of this Memorandum Order, the Court FINDS that Rule 53(a)(1)(C), which allows a master to "address pretrial . . . matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district," warrants appointment of a special master to manage discovery in this case. Pursuant to Rule 53(a), the Court hereby APPOINTS Craig P. Seebald of Vinson & Elkins, LLP, to serve as Special Master according to the terms of this Order of Appointment.

### A.    Master's Duties

Rule 53(a)(1)(C) states that the Court may appoint a special master to "address pretrial and post-trial matters that cannot be addressed effectively and timely by an available district judge or magistrate judge of the district." Due to the complex nature of this case and the Court's heavy trial schedule, the Court finds a special master for discovery to be necessary to effectively and timely manage discovery in this case.

The Court has reviewed recent legal authority addressing the duties of a Special Master that are permitted under the Federal Rules of Civil Procedure and Article III of the Constitution. Consistent with this legal authority and the currently anticipated needs of the Court, the Court states that the Special Master in these proceedings shall have the authority to:

1. Use his discretion to execute and/or oversee the implementation of the Court's orders regarding discovery;

2. Review and resolve informally any discovery conflicts (including issues such as privilege, confidentiality, and access to medical and other records), and supervise discovery;

3. Direct, supervise, monitor, and report upon implementation and compliance with the Court's orders, and make findings and recommendations on remedial action if required;

9

  4.  Interpret any agreements reached by the parties;

  5.  Make formal recommendations and reports to the Court, regarding any matter pertinent to these proceedings; and

  6.  Communicate with parties and attorneys as needs may arise to permit the full and efficient performance of these duties. *See infra* Part II.B.

For purposes of clarity, the Court's use of the word "discovery" above refers, at minimum, to all matters arising under Rules 26 to 37 of the Federal Rules of Civil Procedure. Any disputes about the scope of the Special Master's appointment may be resolved by the Special Master in the first instance, who may resolve such a dispute by order, to be reviewed pursuant to Part II.D, *infra*, or by requesting a clarifying amendment from the Court pursuant to Rule 53(b)(4).

  The Court DIRECTS the Special Master to conduct a Rule 26(f) conference with the parties on or before September 20, 2024, and to file a report on or before September 27, 2024 apprising the Court of the resolution of the parties' discovery plan and schedule. The Court also DIRECTS the Special Master to file a report following the close of discovery describing the completed process and making, if applicable, any recommendations to the Court regarding the continued litigation of this case, including the need for any sanctions. The Special Master may, in his discretion, file interim reports or recommendations with the Court as he deems appropriate.

  **B.**  **Communications with the Parties and the Court**

  Rule 53(b)(2)(B) directs the Court to set forth "the circumstances — if any — in which the master may communicate *ex parte* with the court or a party." The Court hereby ORDERS that the Special Master may communicate *ex parte* with the Court at the Special Master's discretion, without providing notice to the parties, to inquire into any discovery-related issue, or to seek the Court's guidance on such an issue. The Special Master may also communicate *ex parte* with the Court, without providing notice to the parties, regarding logistics, the nature of his

10

activities, management of the litigation, and other appropriate procedural matters. The Court may later limit the Special Master's *ex parte* communications with the Court with respect to certain functions if the role of the Special Master changes.

The Special Master <u>may not</u> communicate *ex parte* with any party or counsel of record. Informal communications with all parties shall be within the discretion of the Special Master. The Special Master shall record minutes of all meetings and share them with the parties, but not with the Court, and retain a copy for his records. Any formal communications with the parties shall occur by letter, shall not be shared with the Court, and shall be retained among the Special Master's Records. Any communication requiring action of any party shall be made in the form of an Order and entered on the docket, as described in Part II.D, *infra*.

### C. Master's Record

Rule 53(b)(2)(C) states that the Court must define "the nature of the materials to be preserved and filed as a record of the master's activities." The Court DIRECTS the Special Master to maintain normal billing records of his time spent on this matter, with reasonably detailed descriptions of his activities and matters worked upon. *See also* Part II.E, *infra*. The Special Master shall retain records of all communications with the parties and minutes of all meetings. *See also* Part II.B, *supra*. Any Orders of the Special Master shall be entered in writing, signed by initials as exhibited in the signature block of this Order, and submitted to chambers for entry on the docket. *See also* Part II.D, *infra*. The Court may later amend the requirements for the Special Master's record if the role of the Special Master changes.

### D. Review of the Special Master's Orders

Rule 53(b)(2)(D) directs the Court to state "the time limits, method of filing the record, other procedures, and standards for reviewing the master's orders, findings, and

11

recommendations." The Court DIRECTS the Special Master to reduce any formal order, finding, report, or recommendation to writing, signed by initials as exhibited in the signature block of this Order, and submitted electronically to the chambers of the undersigned for entry on the docket.

Pursuant to Rule 53(f)(2), any party may file an objection to an order, finding, report, or recommendation by the Special Master within fourteen calendar days of the date that it was electronically filed; failure to meet this deadline results in permanent waiver of any objection to the Special Master's orders, findings, reports, or recommendations.[4] Absent timely objection, the orders, findings, reports, and recommendations of the Special Master shall be deemed approved, accepted, and ordered by the Court, unless the Court explicitly provides otherwise. Any responses to objections shall be due within fourteen days, with any replies due six days thereafter.

As provided in Rule 53(f)(4) and (5), the Court shall decide *de novo* all objections to conclusions of law made or recommended by the Special Master; and the Court shall set aside a ruling by the Special Master on a procedural matter only for an abuse of discretion. The Court shall retain sole authority to issue final rulings on matters formally submitted for adjudication, unless otherwise agreed by the parties, and subject to waiver of objection to written orders or recommendations as noted above. To the extent that the Special Master enters an order, finding, report, or recommendation regarding an issue of fact, the Court shall review such issue *de novo*

---

[4] Rule 53(f)(2) provides that parties may "file objections to — or a motion to adopt or modify — the master's order, report, or recommendations no later than 21 days after a copy is served, unless the court sets a different time." The Court hereby SETS a period of 14 calendar days, calculated in accordance with Rule 6, to expedite final resolution of matters formally reported upon by the Special Master. Pursuant to Local Rule 7(I), motions for extensions of time to file objections will not normally be granted unless good cause is shown.

and for clear error, if any party timely objects pursuant to the Rules and within the 14-calendar-day period set forth herein. *See* Fed. R. Civ. P. 53(f)(3). Failure to meet this deadline will result in permanent waiver of any objection to the Special Master's findings of fact. Any factual findings of the Special Master will be final. Fed. R. Civ. P. 53(f)(3)(B).

### E. Compensation

Rule 53(b)(2)(E) states that the Court must set forth "the basis, terms, and procedure for fixing the master's compensation." *See also* Fed. R. Civ. P. 53(g) (addressing compensation). The Court hereby ORDERS that the Special Master shall be compensated at the rate of $1,500.00 per hour, with the parties bearing this cost equally, based on the factors set forth in Rule 53(g)(3). The Special Master shall incur only such fees and expenses as may be reasonably necessary to fulfill his duties under this Order, or such other Orders as the Court may issue. The Court has "consider[ed] the fairness of imposing the likely expenses on the parties and [has taken steps to] protect against unreasonable expense or delay." Fed. R. Civ. P. 53(a)(3).

The Special Master shall directly bill the parties on the first day of each month, beginning on August 1, 2024, and his bills shall include an itemized statement of fees and expenses. However, if any entry captures a privileged matter, that entry may be entered as a summary statement. The parties shall then remit to the Special Master their share of the Special Master's fees and expenses within twenty-one calendar days.

The Special Master has advised that the duties herein assigned shall be performed principally by the Special Master, as well as by Michael McCambridge, an associate at Vinson & Elkins. The Special Master will also be aided by a senior paralegal at his firm. The Court approves of this arrangement. If reasonably necessary, the Special Master may employ the services of other lawyers in his law firm, provided that their identities first shall be made known

to the Court and the parties. The Special Master also may use the services of legal assistants and support staff as deemed reasonably necessary.

Mr. McCambridge shall be compensated at a rate of $950 per hour, and the Special Master's senior paralegal shall be compensated at the rate of $400.00 per hour. The rates of other lawyers or support staff shall be made known to the parties, and, in a subsequent Order, shall be approved by the Court upon a determination that the rates are reasonable.

  **F. Other Matters**

    **1. Affidavit**

Rule 53(b)(3) notes that the Court may enter an Order of appointment "only after the master has filed an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455." The Special Master has submitted such an affidavit. (ECF No. 14-1.)

    **2. Cooperation**

The Special Master shall have the full cooperation of the parties and their counsel. Pursuant to Rule 53(c), the Special Master may, if appropriate, "impose on a party any noncontempt sanction provided by Rule 37 or 45, and may recommend a contempt sanction against a party and sanctions against a nonparty." As an agent and officer of the Court, the Special Master shall enjoy the same protections from being compelled to give testimony and from liability for damages as those enjoyed by other federal judicial adjuncts performing similar functions. The parties will make readily available to the Special Master any and all facilities, files, databases, and documents which are necessary to fulfill the Special Master's functions under this Order.

\*   \*   \*

The Court hereby DIRECTS the Special Master to begin the execution of his duties as set forth above, and to "proceed with all reasonable diligence." Fed. R. Civ. P. 53(b)(2). Part II of this Memorandum Order (i.e., the Master's Order of Appointment) may be amended pursuant to Rule 53(b)(4) as required to assist the Special Master in the discharge of the duties herein assigned.

Let the Clerk file a copy of this Memorandum Order electronically on the docket and the MDL Website, notify all counsel of record, and forward a copy to Special Master Craig P. Seebald.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Alexandria, Virginia
Date: <u>July 18, 2024</u>