IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| In re:<br><br>CAPITAL ONE 360 SAVINGS ACCOUNT<br>INTEREST RATE LITIGATION | MDL No. 1:24md3111 (DJN)<br><br>This document relates to<br><u>ALL CASES</u> |

## MEMORANDUM ORDER
### (Denying Motion to Strike Jury Demand)

Plaintiffs, holders of Capital One "360 Savings" accounts between September 2019 and the filing of the Consolidated Amended Complaint, bring this multidistrict class action, on behalf of themselves and all others similarly situated, against Defendants Capital One, N.A. ("CONA") and Capital One Financial Corp. ("COFC") (collectively, "Defendants"). Plaintiffs' Consolidated Amended Complaint (ECF No. 10 ("CAC")) asserts twenty-three claims, including breach of contract and the implied covenant of good faith and fair dealing, violations of the consumer protection or unfair competition statutes of eighteen different states, unjust enrichment and promissory estoppel. Plaintiffs seek to represent a nationwide class "of all persons who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account," as well as eighteen state subclasses including all such individuals in the states where the named Plaintiffs reside, (CAC ¶ 119), and have requested a jury trial on all triable issues. (*Id.* at 97.) This matter now comes before the Court on Defendants' Motion to Strike Jury Demand. (ECF No. 31 ("Motion").)

For the reasons set forth below, the Court DENIES Defendant's Motion to Strike (ECF No. 31). Trial will occur before a jury.

## I.   BACKGROUND

### A.   Plaintiffs' Consolidated Amended Complaint and Allegations

This consolidated multidistrict action arises out of Defendants' alleged breach of contract and the duty of good faith and fair dealing, as well as violations of various state consumer protection and unfair trade practice laws. Plaintiffs seek to recover lost interest that Defendants' alleged conduct prevented them from earning on their "high interest" 360 Savings accounts.

The CAC (ECF No. 10) alleges that Defendants, acting in bad faith, cheated Plaintiffs and similarly situated accountholders out of higher interest payments by creating a duplicate savings account, "360 Performance Savings," and concealing from Plaintiffs the fact that their "high interest" 360 Savings accounts were earning much less interest than the 360 Performance Savings accounts. (CAC ¶¶ 1–11.)

On February 17, 2012, Capital One announced that it purchased ING Direct USA, which at the time offered an online savings account to United States consumers called "ING Direct." (*Id.* ¶ 54.) On or about February 1, 2013, after the banks finalized the sale, ING Direct became "Capital One 360." (*Id.*) Notably, consumers with ING Direct savings accounts automatically became Capital One "360 Savings" accountholders. (*Id.*) Plaintiffs allege that Capital One advertised 360 Savings accounts as having "high interest" or a "great rate" from at least April 2013 until September 2019. (*Id.* ¶ 61.) In January 2018, with the federal funds effective rate rising, Capital One increased the rate on the 360 Savings account from 0.75% to 1.00%. (*Id.* ¶ 62.) Plaintiffs allege that Capital One would never raise the interest rate for 360 Savings accounts again. (*Id.* ¶ 63.) Rather, Plaintiffs allege that Capital One dropped the rate for those accounts from 1.00% in October 2019 to 0.30% in December 2020, where it has remained frozen ever since. (*Id.* ¶ 67.) Consistent with consumers' reasonable expectations for "high interest" or

"high yield" savings accounts, the rates on their accounts previously fluctuated with market conditions, both before Capital One's purchase of ING Direct USA and following their transition to 360 Savings accounts. (*Id.* ¶ 71.) For reasons described in greater detail in the CAC, Plaintiffs allege that Capital One acted deceptively, dishonestly, unfairly, in breach of its contract with 360 Savings accountholders and in violation of consumer protection statutes and common law by failing to preserve "high interest" rates on the 360 Savings rate. (*Id.* ¶ 80.)

The vast majority of named Plaintiffs[1] opened their online savings accounts with ING Direct prior to February 1, 2013. (*Id.* ¶ 55.) As noted above, these Plaintiffs allege that their ING Direct accounts were automatically converted to Capital One 360 Savings accounts on or about February 1, 2013. (*Id.*)

In their Consolidated Amended Complaint, Plaintiffs "demand a trial by jury on all triable issues." (*Id.* at 97.)

### B. Jury Trial Waiver

The "360 Savings Account Disclosures" ("360 Disclosures") govern Capital One "360 Savings" accounts. Per the 360 Disclosures, their terms apply to anyone who applies to open, opens or uses a 360 Savings Account. (*See* ECF 32-1 ("Def. Ex. 1") at 2[2] ("Please understand that when you submit an application, open an account, or use our services, you agree to be bound by these terms.").) The version of the 360 Disclosures submitted by Defendants, dated June 5,

---

[1] Of the 27 named Plaintiffs, only one remaining Plaintiff alleges that she originally opened her 360 Savings account with Capital One, rather than with ING Direct. Plaintiff Pitts opened 360 Savings accounts in or around June 2017 and February 2019. (CAC ¶ 107.)

[2] The Court's citations use the pagination assigned by the ECF system, rather than the parties' pagination in their respective briefs and exhibits.

3

2024, includes two clauses relevant to Defendants' Motion. On page 13 of the 360 Disclosures, several lines below the heading "Additional disclosures," the document states the following:

> **Jury trial waiver:** All actions arising out of this agreement or concerning your account shall be heard by a judge sitting without a jury.

(*Id.* at 14) (emphasis in original).

A few lines above this text, under the same "Additional disclosures" heading, the 360 Disclosures purports to grant Capital One the power to "add to, delete or make any other changes we want to these terms at any time." (*Id.* at 13.) This clause also instructs accountholders that "[y]ou will be bound" by any such changes "as soon as we implement them." (*Id.*)

### C. Defendant's Motion

In response to Plaintiffs' Consolidated Amended Complaint, Defendants timely filed a Motion to Dismiss, (ECF No. 29), and the instant Motion to Strike Jury Demand. (ECF No. 31). In support of their Motion to Strike, Defendants cite the aforementioned jury trial waiver clause and contend that this language constitutes an "unambiguous," "express" waiver of Plaintiffs' Seventh Amendment right to a jury trial. (ECF No. 32 ("Def. Mem.") at 1.) Plaintiffs filed their Opposition to Defendant's Motion to Strike, (ECF No. 38 ("Opp.")), arguing that the jury waiver is unenforceable, because Plaintiffs did not waive their right to a jury on a voluntary and informed basis. Defendants filed their Reply on September 13, 2024, (ECF No. 41 ("Reply")), rendering Defendants' Motion ripe for review.

## II. LEGAL STANDARD

The Seventh Amendment "provides that in Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." *Chauffeurs, Teamsters and Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 564 (1990) (internal

quotations omitted). "[A]ny seeming curtailment" of the right to a jury trial "should be scrutinized with the utmost care." *Id.* at 565.

While the Seventh Amendment provides a fundamental right to a jury trial, this right "can be knowingly and intelligently waived by contract." *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir. 1986). In the Fourth Circuit, the party seeking to enforce such a waiver bears the burden of proof "that consent [to the waiver] was both voluntary and informed." *Id.* at 833. Factors that the Court will consider in making this determination include: "(1) the parties' negotiations concerning the waiver provision; (2) the conspicuousness of the provision in the contract; (3) the relative bargaining power of the parties; and (4) whether the waiving party's counsel had an opportunity to review the agreement." *Zaklit v. Glob. Linguist Sols., LLC*, 53 F. Supp. 3d 835, 855 (E.D. Va. 2014) (internal quotations omitted). This inquiry necessarily focuses on the facts before the Court. *See Brookhart v. Janis*, 384 U.S. 1, 4 (1966) ("In deciding the federal question of waiver . . . we must, of course look to the facts which allegedly support the waiver."); *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 182 (1st Cir. 1995) (describing analysis of jury trial waiver as "a fact-intensive exercise"); *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007) ("To be valid, a jury waiver must be made knowingly and voluntarily based on the facts of the case.").

### III. ANALYSIS

Defendants fail to establish a basis for the Court to find that Plaintiffs actually waived their right to a jury trial, let alone that they did so on a voluntary and informed basis. The Court cannot conduct a fact-based inquiry without any facts. Consequently, and as explained more fully below, the Court has no choice but to DENY Defendant's Motion (ECF No. 31).

5

Defendants make one evidentiary submission in support of their Motion: a copy of the 360 Savings Account Disclosures agreement with an effective date of June 5, 2024.[3] (Def. Ex. 1.) As previously discussed, the 360 Disclosures contain language indicating that Plaintiffs agree to waive their right to a jury by opening or using their Capital One 360 Savings account. (*Id.* at 14.) Defendants allege that this version of the 360 Disclosures serves as the proper version for the Court to consider, because Plaintiffs purportedly incorporated this version into their Consolidated Amended Complaint. (Reply at 6.) In the alternative, Defendants argue that, since "several Plaintiffs" allege that they continue to be 360 Savings accountholders, the 360 Disclosures continue to bind them, including their June 5, 2024 iteration. (*Id.* at 7.)

Defendants' evidentiary submission proves neither relevant nor helpful to the Court's inquiry. The June 5, 2024 version of the 360 Disclosures post-dates the most recent Plaintiff account opening date by more than five years. *See supra* note 1. It post-dates the overwhelming majority of Plaintiffs' account opening dates by *more than ten years*. (CAC ¶ 55.) Consequently, the Court lacks any factual basis to determine what information Plaintiffs actually saw when they became 360 Savings accountholders. Even if it assumed that the text of the jury trial waiver clause remained unchanged across prior versions, the Court would still be in the dark as to *how* the text appeared in those prior versions, and significantly (1) where Defendants placed it within the 360 Disclosures and (2) how conspicuously they presented it to Plaintiffs. This complete absence of relevant information renders the Court's four-factor analysis for voluntary and informed waiver impossible. *See, e.g., Zaklit*, 53 F. Supp. at 855 (applying Fourth Circuit

---

[3]   Defendants state in their Reply that "Capital One is willing to submit the previous versions of the Agreement if the Court deems it necessary or helpful." (Reply at 2, n.2). It is not the Court's role to instruct Defendants on how to meet their evidentiary burden. Therefore, the Court will analyze the evidence before it and make its decision on that basis.

four-factor test, including analysis of whether waiver provisions are sufficiently "conspicuous" within an agreement).

Defendants' argument that the June 5, 2024 version of the 360 Disclosures is the appropriate one for purposes of assessing Plaintiffs' waiver, because "that is the version of the Agreement Plaintiffs incorporated in their Complaint," lacks merit and unnecessarily confuses the issues before the Court. (Reply at 6.) Even assuming that Plaintiffs incorporated this version of the 360 Disclosures into their Consolidated Amended Complaint,[4] this Court's waiver inquiry focuses not on Plaintiffs' Consolidated Amended Complaint, but on the voluntary and informed nature of Plaintiff's waiver *when that waiver took place*. The moment at which Plaintiffs became accountholders constitutes the natural and obvious focal point for that inquiry. *See, e.g., Smith v. Bank of Hawaii*, 2018 WL 1662107, at *1–2, *10–11 (D. Haw. Apr. 5, 2018) (court's waiver inquiry focused on signature cards signed at time of account opening); *Collins v. Countrywide Home Loans, Inc.*, 680 F. Supp. 2d 1287, 1295–96 (M.D. Fla. 2010) (court's waiver inquiry focused on loan origination agreement hand-signed by Plaintiffs at initiation). Defendants may, of course, argue that voluntary and informed waiver occurred at some other time while Plaintiffs were accountholders, but they never expressly do so. Instead, Defendants claim that waiver occurred at the time of *filing* — after many Plaintiffs had ceased to be accountholders, and at the same time that Plaintiffs expressly demanded trial by jury. This argument asks the Court to ignore not just the precedent cited by both parties, but also common sense.[5] Accordingly, the Court finds Defendants' arguments based on incorporation of the June

---

[4] The Court analyzes this issue more fully in its Memorandum Opinion granting in part and denying in part Defendants' Motion to Dismiss. (ECF No. 49.)

[5] The Court struggles to make sense of Defendant's theory of "waiver at filing by incorporation," considering that Plaintiffs expressly demanded trial by jury as part of that *very*

7

5, 2024 version of the 360 Disclosures unpersuasive and finds that the June 5, 2024 terms do not provide a valid basis for the Court to conduct its fact-based inquiry as to whether Plaintiffs' alleged waiver was voluntary and informed.

In addition to failing to provide the Court with relevant versions of the terms governing Plaintiffs as accountholders, Defendants have also provided no evidence concerning what, if any, notice they provided to Plaintiffs regarding the 360 Disclosures' purported jury waiver terms. Defendants' pleadings provide no information as to the format (print or online) in which they supplied notice of the 360 Disclosures, or the 360 Disclosures themselves, to Plaintiffs. And that's assuming (without any evidence in support) that Plaintiffs received notice of the 360 Disclosures at all — something the Court refuses to assume without proof.

Finally, Defendant fails to address the particular complexity of the scenario faced by the overwhelming majority of Plaintiffs in this case: opening high interest savings accounts with one bank (ING Direct), only to have those accounts converted into accounts at a different bank (Capital One). The Court has no basis to believe that these accountholders ever took any affirmative steps to become Capital One customers, let alone voluntarily and informedly waived their right to jury trial against Capital One. Defendants' failure to address the implications of this scenario for the inquiry into voluntary and informed waiver constitutes a troubling omission, especially considering that the caselaw that Defendants cite concerning banks seeking to enforce jury waivers against accountholders consists almost exclusively of cases where parties *actually*

---

*same filing.* (CAC ¶ 97 ("Plaintiffs . . . demand a trial by jury on all triable issues.").) Even if the Court accepted Defendants' argument that Plaintiffs' reference in the CAC to the June 5, 2024 version of the 360 Disclosures constituted incorporation, and that this incorporation established a valid basis for waiver, such waiver would clearly fall short of the "voluntary and informed" standard, given Plaintiffs' manifest and express intent *not* to waive their Seventh Amendment rights by including a jury demand within that same document.

8

*signed up for their accounts* and where the courts' analysis of waiver centered largely on what Plaintiffs knew and didn't know *at the time of account opening*.[6] *See, e.g., Collins*, 680 F. Supp. 2d at 1295–96 (where plaintiffs obtained loan from lender, court's inquiry focused on what plaintiffs would have seen when signing the document at origination).

The Court finds support in two federal cases out of Florida and New York with similar facts and similarly sparse evidentiary submissions. Both of these courts denied defendant banks' motions to strike; their approach proves instructive here.

In *Lapenna v. Suntrust Bank*, 2010 WL 3368448 (M.D. Fla. Aug. 24, 2010), the plaintiff "opened a bank account with a predecessor bank ... which [was] ... later acquired by" the defendant. *Id.* at *1. The defendant bank moved to strike the plaintiff's jury demand based on a jury trial waiver allegedly contained within the "rules and regulations" governing the account in question. *Id.* In support, defendant filed a copy of the rules in effect at the time of briefing, nearly 20 years after the plaintiff opened her account. *Id.* Denying the motion to strike, the Court pointed to the fact that, based on the record, it "is unknown how conspicuously the jury trial waiver clause is set forth in the Rules and Regulations for Deposit Accounts" at the time that defendant "assumed control over the [...] account in question [because] [t]hose Rules and Regulations *have not been provided for the Court's review.*" *Id.* at *2 (emphasis added). In addition, "No information has been provided . . . that indicates Plaintiff was ever given the applicable Rules and Regulations." *Id.* The court lamented that "[i]t is further unknown, what Rules and Regulations were in place" when Plaintiff signed a separate agreement for a separate

---

[6] While the court in *Norris v. Suntrust Banks, Inc.*, 2020 WL 533934 (M.D. Fla. Feb. 3, 2020), did not explicitly describe the temporal focal point of its waiver inquiry as to plaintiff's credit card account, its inquiry concerning plaintiff's promissory note focused on documents that plaintiff affirmatively signed, presumably at account opening. *Id.* at *2–3.

9

deposit account with the same bank. *Id.* Considering these facts together with other findings, the Court found the jury trial waiver unenforceable, because it "is simply too far removed from an affirmative action on [Plaintiff's] part to find a knowing, voluntary and intelligent waiver" of the right to a jury trial. *Id.* at *3.

As in *Lapenna*, so true with Defendants. Here, Capital One acquired ING Direct after the vast majority of Plaintiffs had already opened their accounts. (CAC ¶ 55.) Defendants similarly submitted the applicable account rules in effect at time of briefing, not account opening, and provided no information to the Court as to what, if anything, Defendants affirmatively supplied to Plaintiffs at the time that they became Capital One accountholders, or anytime since. This Court confronts essentially the same situation: the alleged waiver remains "far removed from an affirmative action" on Plaintiffs' part, and Defendants have provided little to no support for a finding of voluntary and informed waiver. *Lapenna*, 2010 WL 3368448, at *3. The Court feels compelled to follow *Lapenna's* reasoning in finding these facts insufficient for purposes of a motion to strike.

Similarly, in *Ruane v. Bank of America, N.A.*, 308 F. Supp. 3d 718 (E.D.N.Y. 2018), the trial court denied the defendant bank's motion to strike the plaintiff's jury demand on similar grounds. *Id.* at 719. There, Bank of America based its motion on a jury waiver clause in the bank's standard Deposit Agreement. *Id.* In support of its motion, the bank submitted several versions of that agreement, but not the version that governed at the time that plaintiff opened her account. *See id.* at 722 ("The earliest version of the Deposit Agreement in the record has an effective date . . . almost two months after Plaintiff opened her BANA account."). The court subsequently found that "[t]here is no evidence that the Deposit Agreement in effect when Plaintiff opened her account included a jury waiver," and that the defendant's submission of a

later agreement — even one removed by only two months — did not answer this critical question. *Id.* Despite the defendant's assurances to the contrary, the court declared that, based on the evidence in the record, it "cannot conclude that each version of the Deposit Agreement, including the version in effect [when plaintiff opened her account], contained the same jury waiver language." *Id.* On this basis, along with other findings, the court declined to strike the plaintiff's jury demand. *Id.* at 723.

Much like in *Ruane*, Defendants here have provided no evidence that the terms governing Capital One's 360 Savings accounts when Plaintiffs became accountholders included a jury waiver. The recent version provided to the Court cannot answer that question. This Court possesses no stronger reason to find that Plaintiffs waived their right to a jury on a voluntary and informed basis than did the *Ruane* court, nor any principled reason why it should rule differently.

With no evidence before it concerning the account terms in place when Plaintiffs opened their 360 Savings accounts, no evidence concerning the account terms in place while Plaintiffs maintained their accounts and no evidence concerning what notice, if any, Plaintiffs received concerning these account terms, the Court cannot perform the fact-based analysis it must conduct to ascertain whether Plaintiffs waived their fundamental right to a jury trial on a voluntary and informed basis. Guessing at what the agreement *might* have looked like when Plaintiffs signed up, how conspicuous any jury trial waiver *might* have been at that time and what kind of notice Defendants *might* have provided would make a mockery of the Supreme Court's directive to "scrutinize[] with the utmost care" "any seeming curtailment" of the right to a jury trial. *Chauffeurs,* 494 U.S. at 565. The Court refuses Defendants' invitation to proceed down such a path.

Since the burden rests squarely on Defendants to establish that Plaintiffs waived their right to a jury trial on a voluntary and informed basis, and since Defendants fail to meet this burden, the Court DENIES Defendants' Motion.

## IV.   CONCLUSION

For the reasons set forth above, the Court hereby DENIES Defendant's Motion to Strike (ECF No. 31).

Let the Clerk file a copy of this Memorandum Order electronically and notify all counsel of record, as well as the Special Master.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: November 12, 2024